569 So.2d 691 (1990)
Marcus ROBERSON
v.
STATE of Mississippi.
No. 07-KA-58998.
Supreme Court of Mississippi.
October 24, 1990.
Charles E. Webster, Twiford & Webster, Clarksdale, for appellant.
Mike C. Moore, Atty. Gen., Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ.
DAN M. LEE, Presiding Justice, for the Court:

STATEMENT OF THE CASE
Appellant, Marcus Roberson, was convicted in the Circuit Court of Coahoma County, Mississippi, of armed robbery. The court sentenced appellant to serve a term of twenty (20) years in the custody of the Mississippi Department of Corrections.
The following issues are presented for consideration by this Court:
I. Whether the trial court erred in allowing the State of Mississippi to introduce certain supposedly non-incriminating statements made by appellant during the State's case-in-chief in an effort to allegedly impeach appellant prior to appellant testifying;
II. Whether the trial court erred in allowing lay witness Billy Gardner, a detective sergeant with the Clarksdale Police Department, to give his opinion as to the age of a fingerprint?
We reverse this case on the basis of Assignment II; therefore, it is not necessary to discuss the merits of Assignment I.

STATEMENT OF THE FACTS

State witnesses
In April of 1987, Ben Carraway worked part-time for the Corner Grocery Store located at 9 East Second Street in Clarksdale, Mississippi. On April 14, 1987 Mr. Carraway went to work at 9:00 p.m. and was supposed to close the store at 12 midnight. Sometime between 11:30 and 11:45 p.m., while Mr. Carraway was watching ESPN on television, an individual entered the store. This individual was wearing a green Halloween mask and a full length brown "tweed looking" trench coat that buttoned from the neck to the floor. He did not wear gloves nor any jewelry.
The intruder walked up to the counter, pointed a gun at Mr. Carraway's chest and said, "Give me your damn money". Mr. Carraway complied with the intruder's request by opening the cash register. The intruder placed his left hand on the counter top where the cash register rested. He *692 held his weapon in his right hand and pointed it at Mr. Carraway. The intruder removed between $250 and $300 from the cash register and then proceeded to back out of the store. Once outside the store the robber turned around and again pointed his weapon at Mr. Carraway. Thereafter, he headed south on Sunflower down toward the railroad tracks. Mr. Carraway watched the robber until he lost sight of him and then he contacted law officers.
The first officer on the scene was Danny Hill, a deputy with the Coahoma County Sheriff's Department. Bill Gardner, a detective sergeant with the Clarksdale Police Department, was the next officer to arrive at the store.
Mr. Carraway described the masked robber as a man between 5'5" and 5'8" tall who weighed between 130 and 140 lbs. Mr. Carraway also related that the robber had touched the counter. It was Carraway's practice to clean the counter off with Formula 409, an all purpose cleaner. Mr. Carraway would mist the counter and wipe it up with a clean towel once or twice every hour. Approximately fifteen or twenty minutes prior to the robbery Mr. Carraway claims he had cleaned the counter and emptied the ash trays. After Mr. Carraway cleaned the counter no more customers entered the store. The next visitor was the robber.
Mr. Carraway related the information about the counter and the robber touching it to Detective Gardner. Detective Gardner dusted the counter and cash register for fingerprints. Detective Gardner lifted one latent hand print from the counter. He filed this print in his office in the event a suspect was later discovered.
During the course of his investigation Detective Gardner developed a suspect, Marcus Roberson, appellant. Neither the Record or the Transcript reveals how or why Marcus Roberson was initially suspected of being the intruder. Nevertheless, the day after the crime was committed, Detective Gardner fingerprinted appellant. He then packaged up the latent print he lifted at the Corner Grocery and appellant's known prints so Sergeant James Price could deliver them to the Crime Lab. On July 28, 1987 Detective Gardner received the results from the comparison made at the Crime Lab showing that the latent print matched appellant's known print. As a result of the report from the Crime Lab, Detective Gardner arrested Roberson June 15, 1987. Authorities never recovered the gun or mask the robber used nor the money taken from the Corner Grocery.

Defense Witnesses
Appellant took the stand in his own defense. He testified that he was at home until his friend, Andre Thompson, picked him up sometime after 7:30 p.m. Thompson drove to the young adult lounge known as the Rivermont located at Sunflower and Highway 61. However, appellant and Thompson were at the Rivermont a short period of time.
When the duo left the Rivermont, Thompson stopped at the Corner Grocery on Second Street shortly after 8:00 p.m. Appellant entered the store and purchased a package of cigarettes. He testified that he was sure he touched the counter when he went in to purchase the cigarettes.
After leaving the Corner Grocery, Appellant and Thompson stopped back by the Rivermont for a few minutes and then drove to the O & J Club on Highway 61 and McKinley in order to shoot pool. Appellant said he and Thompson arrived at the O & J Club at either 9:30 or 9:45 p.m. and remained there until 1:00 a.m.
Appellant claimed he did not own a Halloween mask nor did he have a pistol. He said he did not commit the robbery.

II. Whether the trial court erred in allowing lay witness Billy Gardner, a detective sergeant with the Clarksdale Police Department, to give his opinion as to the age of a fingerprint?

A. Background Information
The objectionable testimony offered by Officer Gardner was his opinion that the fingerprint which he examined had been deposited onto the counter top less than an *693 hour prior to his examination. In other words, he gave his opinion as to the age of a fingerprint. This particular point of evidence was crucial and probably devastating to the defense in that the primary explanation from appellant as to why his fingerprint appeared on the counter top was that he had been in the store some three to four hours earlier that evening.
Further, it should be noted that Officer Gardner was never tendered by the state as an expert in the field of fingerprints although he testified to having received specific training in how to and where to dust for fingerprints and that he had been dusting for fingerprints for twelve (12) years.

B. Arguments

1. Appellant
Appellant correctly anticipates appellee would argue that since Officer Gardner had twelve years experience in raising and lifting fingerprints, this experience qualified him as an expert in that field. Appellant attempts to dispel this argument by stating Gardner was never tendered as an expert witness nor was the objectionable testimony within the field of raising or lifting fingerprints.
Arguing that Officer Gardner was a lay witness and not an expert witness, appellant refers to M.R.E. 701 and asserts that in order for the lay witness' testimony to be admissible, it must be both rationally based on the perception of the witness and helpful to the clear understanding of his testimony or the determination of a fact in issue. Appellant contends Officer Gardner's testimony fails this test and that he never offered any type of rational explanation as to his arriving at such an opinion. His only testimony along those lines were conclusions which he had made in the past regarding how quickly he had seen other prints develop. Moreover, this opinion falls far outside the range of any area of expertise which he may have in raising or lifting fingerprints.

2. Appellee
On direct examination, Officer Gardner was being questioned by the district attorney with regards to fingerprinting matters when the following exchange took place:
Q. How long did it take that print to come up?
A. It came up just about instantly.
Q. So from what your previous testimony is, then that was a fairly recent print?
A. Yes, sir.
BY MR. WEBSTER: I object to the conclusion on the part of Mr. Gardner.
BY THE COURT: The objection is sustained. The jury will disregard that response.
Q. (BY MR. ROBINSON) Mr. Gardner, let me rephrase the question. In your experience, can you gauge the approximate age of a fingerprint?
BY MR. WEBSTER: I object to that question, also.
BY THE COURT: I am going to overrule the objection 
BY MR. WEBSTER:  (interrupting) Mr. Gardner has not been qualified as an expert nor has he been tendered.
BY THE COURT: He has not been tendered. I will agree with that. But this does fall in the area of certain amount of expertise. I am going to overrule the objection to the question and let him answer the question as to whether he can or cannot.
Q. (BY MR. ROBINSON) Now, Mr. Gardner, in your experience, you stated you have got twelve years of working with fingerprints. Can you gauge the approximate age of a fingerprint?
A. Probably not the approximate age. I can gauge that it was recently done.
Q. When you say it was recently done, what do you mean recently done?
A. I would say within the last  probably the last hour.
Q. Okay. All right, then were you able to form an opinion as to the fingerprint that you found at the Corner Grocery? Had that been recently done?
A. Yes, sir.
BY MR. WEBSTER: I would object again.
BY THE COURT: The objection is overruled.
*694 Appellee first argues that although not tendered as an expert, Detective Gardner qualified as an expert in lifting prints under Rule 702 M.R.E. and was therefore capable of giving his opinion as to the "freshness of the fingerprints". Alternatively, he could properly express his opinion as a lay witness under Rule 701 M.R.E.
We quickly discard appellee's first theory in that all of the cases appellee cites in support of this position deal with situations wherein witnesses were tendered/offered as experts and the trial judge was called upon to decide whether these witnesses qualified in the first place as experts and if the ruling was made that they did, a subsequent question involved whether the expert witness could testify to subject matter that the opposing party asserted was outside the witnesses' expertise. The case at bar does not present the Court with a Rule 702 M.R.E. question. The rule which deals with testimony by experts reads as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
This Court is not faced with the questions of whether the police officer "was qualified as an expert witness in fingerprinting" (this is because he was never tendered as an expert) or having been qualified as an expert witness (which we already know is not the case), whether he was testifying outside his area of expertise. Compare, Miller v. Stiglet, Inc., 523 So.2d 55 (Miss. 1988) [Deals with the questions of whether police officers may be qualified as accident reconstructionists after being tendered to the trial court as experts (Affirmative) and whether once qualified as experts, could police officers testify as to cause of the accident (Affirmative)]
This brings us to appellee's alternative theory which states that Officer Gardner could express his opinion as a lay witness under Rule 701 M.R.E. which reads:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.
The Comment to Rule 701 M.R.E. states as follows:
The traditional rule regarding lay opinions has been, with some exceptions, to exclude them from evidence. Rule 701 is a departure from the traditional rule. It favors the admission of lay opinions when two considerations are met. The first consideration is the familiar requirement of first-hand knowledge or observation. The second consideration is that the witness' opinion must be helpful in resolving the issues. Rule 701, thus, provides flexibility when a witness has difficulty in expressing himself in language which does not reflect an opinion. Rule 701 is based on the recognition that there is often too thin a line between fact and opinion to determine which is which. (emphasis mine)

C. Analysis
Before reaching an answer to whether an experienced layman (in this case a police officer with 12 years experience in dusting for fingerprints) can give his opinion as to the age of a fingerprint, it must be determined whether his testimony qualifies under the two (2) part test stated above.
The first prong of the test requires that the lay witness have first-hand knowledge or observation. This language is directed at a witness who was actually at the scene of the crime or accident. There is no question but that Officer Gardner did not see appellant in the store or touch the counter. Lay witnesses are permitted to give opinions, if based on the perception of the witness and helpful to a clear determination of a fact in issue. Common facts on which such opinions are allowed include age, speed, sobriety, and handwriting. T.A. MAUET, FUNDAMENTALS OF TRIAL *695 TECHNIQUES § 4.11 (Little, Brown and Co. 2d ed. 1988).
What we conclude from this analysis is that had Officer Gardner, as a lay witness, observed the defendant place his hand on the counter, then it would be appropriate for him to testify what he perceived, and give his opinion as to the age of the print based on what he witnessed first-hand. Gardner, not being present or perceiving any of the above, the first prong of the test is not met.
A discussion of the second prong of the test is even more dispositive of this issue. The second prong, whether the witness' opinion is helpful in resolving the issues, must be analyzed by asking the question, "Does the testimony tell the jury something it does not already know?" We answer the question in the negative.
In support of this holding, we offer the following reasoning. On page 36 of the transcript, we learn that Officer Gardner has been allowed to explain to the jury the general procedure followed in lifting a print. Moreover, he's explained that the fresher a print, the quicker the print will appear when lifting it. While discussing the procedure he followed in dusting for the precise prints lifted in the case at bar, the following colloquy is important:
Q. How long did it take that print to come up?
A. It came up just about instantly.
(emphasis added) This would have been sufficiently instructive to the jury, that is, a good place to stop the questioning. In other words, the jury could have inferred that the print was fresh because it so quickly appeared and therefore it had to have been put on the counter closer in time to the robbery than appellant contends. Apparently, the trial judge agreed as evidenced by the next exchange, to wit:
Q. So from what your previous testimony is, then that was a fairly recent print?
A. Yes, sir.
BY MR. WEBSTER: I object to the conclusion on the part of Mr. Gardner.
BY THE COURT: The objection is sustained. The jury will disregard that response.
(emphasis added) We agree with this ruling, however, the judge inconsistently allowed the very next exchange, to wit:
Q. (BY MR. ROBINSON-D.A.) Mr. Gardner, let me rephrase the question. In your experience, can you gauge the approximate age of a fingerprint?
BY MR. WEBSTER: I object to that question, also.

BY THE COURT: I am going to overrule the objection 
BY MR. WEBSTER:  (interrupting) Mr. Gardner has not been qualified as an expert nor has he been tendered.
BY THE COURT: He has not been tendered. I will agree with that. But this does fall in the area of a certain amount of expertise. I am going to overrule the objection to the question and let him answer the question as to whether he can or cannot.
(emphasis added) We hold the jury had already been given enough information to infer that the print was relatively fresh. The jury should have been allowed to do its job, instead the following questioning was forthcoming:
Q. (BY MR. ROBINSON-D.A.) Now, Mr. Gardner, in your experience, you state you have got twelve years of working with fingerprints. Can you gauge the approximate age of a fingerprint?
A. Probably not the approximate age. I can gauge that it was recently done.
Q. When you say it was recently done, what do you mean recently done?
A. I would say within the last  probably the last hour.
Q. Okay. All right, then were you able to form an opinion as to the fingerprint that you found at the Corner Grocery? Had that been recently done?
A. Yes, sir.
BY MR. WEBSTER: I would object again.

*696 BY THE COURT: The objection is overruled.

(emphasis added)
This is not the first time we have faced this issue.
In the case of Whittington v. State, 523 So.2d 966 (Miss. 1988), appellant Whittington was found guilty of murdering his wife, in effect, by first beating her to death, then staging the scene to make it appear she died as a result of a one-car automobile accident. One of the investigators of the scene was Grover Allen Chandler, a highway patrolman with 19 years' experience. After relating what he had observed at the scene, he was permitted to testify, over defense objection, that following his investigation he did not think Mrs. Whittington was "killed in the wreck." Id. at 969-70.
In Whittington we clearly held that to allow such expert testimony was error, but it was harmless in that case. Justice Hawkins wrote a scholarly opinion detailing how and why M.R.E. 701 should be interpreted to limit lay expert opinions.
The State argues the literal language of the Rules permit a trial court discretion to allow an opinion such as that expressed by Chandler.
* * * * * *
The State is in error, however. [citations omitted] Whittington, 523 So.2d at 974.
The Whittington Court concluded:
We nevertheless conclude the answer given by Chandler was harmless. It was no more than an expression that his suspicion was aroused following his investigation there at the scene.
Whittington, 523 So.2d 975.
Today's case presents a set of facts similar to those in Whittington, supra (lay witness in the form of investigating officers with several years experience in their trade giving an opinion) but which calls for resolution on the basis of a Rule 701 analysis, not a Rule 704 "ultimate issue" analysis as in Whittington, supra. Therefore, as previously expressed in this opinion, our Rule 701 analysis reveals witness Gardner did not view the fingerprint being placed on the counter, so he lacked first hand knowledge, and, in addition, his testimony did not tell the jury something it did not already know by inference from the store manager, Ben Carraway. In effect, the testimony fails both prongs of the "lay witness opinion testimony" test. See, M.R.E. Rule 701.
Gardner's testimony was in direct conflict with the appellant's explanation  that he had been in the store some three to four hours earlier that evening. Witness Gardner was never tendered or qualified as an expert and should not have been allowed to opine as to the alleged one-hour age of the prints he retrieved that night. Like Whittington, supra, the admission of this testimony was error. Unlike Whittington, however, we cannot say with confidence that the error was harmless and, therefore, reversal is required.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.