643 So.2d 524 (1994)
James Albert SAMPLE, II
v.
STATE of Mississippi.
No. 91-KA-0279.
Supreme Court of Mississippi.
September 29, 1994.
*526 David P. Oliver, Gulfport, for appellant.
Michael C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
PRATHER, Presiding Justice, for the Court:
James Albert Sample, II, prosecutes a criminal appeal from the Circuit Court of the First Judicial District of Harrison County. Sample was convicted of possession of more than one ounce, but less than a kilogram, of marijuana with the intent to distribute that substance to others. He was sentenced to serve ten (10) years in the custody of the Mississippi Department of Corrections with three (3) of those years suspended and seven (7) years to serve. Sample was also ordered to pay a $5000 fine.
Sample raises five issues on appeal, which are: (1) the untimeliness of the State's motion in limine; (2) the sustaining of the State's motion in limine which resulted in the evidentiary exclusion of a civil judgment sought to be introduced by Sample; (3) alleged inadmissible hearsay testimony elicited from Officer Dedeaux; (4) alleged opinion testimony elicited from Officer Corr; and (5) the sufficiency of the evidence used to convict Sample of possession of marijuana with the intent to distribute.
After careful examination of each of these matters and the authorities controlling their disposition, this Court reverses the conviction and verdict and remands for a new trial.

I. FACTS

On June 13, 1990, two indictments were returned against James Albert Sample, II, charging him with possession of cocaine and possession of more than one ounce of marijuana with the intent to distribute those substances to others. The charges were jointly tried and the jury acquitted Sample of cocaine possession, but returned a verdict of guilty as charged for his possession of marijuana with the intent to distribute. The salient facts are as follows.
On Saturday, January 6, 1990, at approximately 7:00 p.m., Gene Dedeaux, a patrolman with the Harrison County Sheriff's Department, was engaged in routine patrol on Highway 53 of the Lizana community in Harrison County when he observed a black Camaro automobile parked in a residential driveway. Dedeaux's attention was drawn to this vehicle because its parking lights were on, it was parked at a residence where a shooting had occurred a week earlier, and Dedeaux had received official information at a pre-patrol briefing that a car matching the description of the black Camaro had recently been stolen.
Officer Dedeaux drove by the residence, then turned his patrol car around and drove by again for a second look. He observed at this time a white male entering the driver's side of the Camaro carrying "something white and bulky in his arms when he was *527 getting in[to] the vehicle." Dedeaux parked his automobile on an intersecting road and watched as the black Camaro entered the highway and headed east. Dedeaux followed the Camaro and ran a license tag check on the automobile. The tag on the Camaro properly belonged on a 1984 Ford LTD. Suspecting that something was awry, Dedeaux stopped the Camaro because of the improper tag.
James Sample, a white male, was driving the automobile, and another white male, Roby Roberts, was riding as a passenger in the front seat. Upon being asked to produce his driver's license, Sample handed Dedeaux two traffic citations, one issued for driving with a suspended driver's license and the other for driving with an improper tag.
Dedeaux asked Sample if he was carrying any weapons or illegal drugs in the automobile. Sample replied that he was not and granted Dedeaux's request to search the vehicle. Officer Dedeaux found a plastic bag containing a white powdery substance partially concealed underneath the front seat on the passenger side of the automobile.
Ricky Dubisson, another officer with the Harrison County Sheriff's Department, arrived at the scene to assist in the search of the Camaro. Behind the front seat on the passenger side, underneath a blue and white afghan, Dubisson found a white, plastic garbage bag containing three clear plastic bags of a green leafy substance. Both occupants were arrested and charged with possession of illegal drugs.
Subsequently, it was determined that the white, powdery substance was cocaine and the green, leafy substance was marijuana. Two of the three bags were weighed and found to contain 443.6 grams  approximately one (1) pound  of marijuana. The third bag was not weighed because its contents were "molded."

II. DISCUSSION

1. and 2. The State's Motion In Limine
Approximately $500 to $600 was found inside Sample's Camaro at the time the cocaine and marijuana were seized. Previously, the State had unsuccessfully sought to have this money forfeited in a civil forfeiture proceeding. In the civil proceeding, the trial court had ruled in favor of the defendant because the State failed to refute Sample's claim that he had earned the money legitimately.
On the day of the criminal trial, the Assistant District Attorney moved to prohibit Sample from mentioning, or introducing into evidence, the civil judgment of the court entered in the forfeiture proceeding. Sample objected to the lateness of the motion for he intended to offer the judgment into evidence during trial, claiming it was relevant to the issue of his innocence. Sample's reasoning was articulated by his counsel as follows: "He can say to the jury, `If I was involved in the drug trade why was my money given back to me?' It's very relevant to his innocence."
Following a declaration by the State that it did not intend to use or mention the money at trial, the circuit judge sustained the State's motion in limine, thereby precluding Sample from either introducing into evidence or mentioning in any way the prior judgment entered in the civil forfeiture case. Sample reasons that because the $500 or $600 found in the same automobile was not forfeited to the State, a jury could rationally infer from this fact alone that Sample was not linked to the drugs.
By virtue of Miss. Code Ann. § 41-29-153 (Supp. 1992), all money which is used or intended for use in violation of the Uniform Controlled Substances Law, § 41-29-101 et seq., is subject to forfeiture. The standard of proof placed upon the petitioner in regard to property forfeited under the provisions of the Uniform Controlled Substances Law is a preponderance of the evidence. Hickman v. State, ex rel. Mississippi Department of Public Safety, 592 So.2d 44, 47 (Miss. 1991); See Mississippi Code Ann. § 41-29-179(2) (Supp. 1993).
The trial judge in the civil proceeding explained that the reason he ruled in favor of Sample during the forfeiture proceeding was because the State failed to refute Sample's claim made during pretrial discovery that he had received the money during a legitimate business transaction. In this case, the court *528 specifically ruled that the civil judgment issued in Sample's favor in the forfeiture proceeding would not be relevant to his guilt or innocence of cocaine or marijuana possession in the subsequent criminal proceeding, but even if it were, by virtue of Rule 403, M.R.E., relevant evidence may be excluded when its probative value is outweighed by its tendency to mislead, to confuse, or to prejudice the jury.[1]
The cases cited and relied upon by Sample demonstrate that a civil judgment is admissible under certain circumstances. While acknowledging this fact, the State argues that those circumstances are not found in the present case. This Court agrees. The fact the trial judge did not require Sample to forfeit a certain sum of money found inside his automobile would not have a tendency to make more or less probable his innocence of marijuana or cocaine possession.
Rule 401, M.R.E. defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
Rule 403, M.R.E., which allows for the exclusion of relevant evidence, states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
Given the contours of Rules 401 and 403, this Court cannot say the trial judge abused his judicial discretion in ruling that the civil judgment declaring the money to be nonforfeitable was inadmissible. Its admission into evidence would add no probative value on the issue of Sample's guilt or innocence of possession of marijuana with intent to deliver. Cf. King v. State, 580 So.2d 1182, 1189 (Miss. 1991).
Assuming the existence of some relevancy, the trial judge did not abuse his broad judicial discretion in finding specifically that any probative value possessed by the civil judgment was substantially outweighed by the danger of confusing the issues or misleading the jury. Foster v. State, 508 So.2d 1111, 1117-18 (Miss. 1987). The fact finder should not be placed in the position of trying the civil forfeiture as well as the criminal charges contained in the indictment. Injection of forfeiture into the trial of this case would have confused the issues.
It is not our task as a reviewing court to engage in a new balancing process. Rather, we determine whether or not the trial judge abused his discretion in excluding this evidence. This Court concludes that the trial judge did not abuse his discretion in his ruling.

3. The Alleged Inadmissible Hearsay Testimony of Officer Dedeaux
Officer Dedeaux, the arresting officer, testified that the reason he was suspicious of the black Camaro was that he had been instructed at the daily patrol briefing to be on the lookout for a black Camaro automobile which had recently been stolen. Further, he had been informed that a shooting had taken place at the Shaws' residence located on Highway 53, and he was to "do an extra patrol." Sample claims this testimony, which was objected to, embodied inadmissible hearsay. The State, on the other hand, claims this testimony did not constitute hearsay because it was not offered to prove the truth of the matter asserted. This Court disagrees with the State and holds that the statement was irrelevant testimony and highly prejudicial.
There is no reason for Deputy Dedeaux to explain his presence on the roads of Harrison County in a position to observe the Camaro and his subsequent investigation after learning that the car had an improper *529 tag. His testimony that a shooting had been reported at the residence where the car was seen and that a car fitting that description had been either stolen, or was involved in a robbery, was unduly prejudicial in that it allowed an inference that Sample was engaged in other crimes. It follows that this explanation which is unduly prejudicial should be excluded because, first, it is not relevant, Miss.R.Evid. 401, and second, if remotely relevant, it is more prejudicial than probative. Miss.R.Evid. 403. This Court finds reversible error in this assignment.

4. The Opinion Testimony of Officer Corr
Shane Corr, an officer with the Bay St. Louis Police Department assigned to the Gulf Coast Multi-Jurisdictional Task Force, testified that a typical user of marijuana purchased his supply in quarter (1/4) "gram" quantities. According to Corr, thirty-one (31) grams equals an ounce. After testifying that he had an opportunity to observe the marijuana seized in this case, Officer Shane Corr was asked whether, in his experience, he had ever found anyone with that much marijuana who intended it merely for their personal consumption. Sample objected to this question. After some discussion about the matter, the objection was overruled. Corr then answered as follows: "For the common user no, sir, this is way too much of a quantity for him to use for his personal use." Sample claims this testimony was inadmissible because Corr was never qualified and tendered as an expert witness.
Officer Corr had been a member of the Mississippi Gulf Coast Multi-Jurisdictional Narcotic Task Force (NTF) for ten (10) months at the time he became involved in this case and had worked the streets of Harrison County in an undercover capacity making purchases of drugs, including cocaine and marijuana. He was never qualified as an expert witness. Corr testified without objection that the "street value" of one (1) ounce of marijuana in January of 1990 was $140 to $160, that normal street usage would be for a person to purchase a quarter "gram" of marijuana for his personal use, and that there were 31 grams in an ounce.
Corr also testified, over objection, that based upon his experience with the task force, the customary packaging of marijuana was in ziploc bags, of either quarter "grams" or half "grams."
The State, citing Stringer v. State, 557 So.2d 796, 797-98 (Miss. 1990), and Boches v. State, 506 So.2d 254, 260 (Miss. 1987), contends this type of testimony was relevant on the issue of intent to distribute. On occasion this Court has brought this matter to the attention of the State for failing to present evidence. See Bryant v. State, 427 So.2d 131, 132-33 (Miss. 1983). The proof established no more than a mere suspicion of intent to deliver because the State failed to demonstrate that the quantity the defendant possessed did not exceed what Sample could consume within a reasonable time.
Although Officer Corr was never qualified as an expert witness, he had worked the streets as a member of the narcotics task force. The basis for his testimony was his recent experience in buying illegal drugs, including marijuana and cocaine.
Rule 701, Miss.R.Ev., which deals with opinion testimony by lay witnesses, states, in its entirety, that
[i]f the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.
There is often a very thin line between fact and opinion. The problem with Corr's "expert" testimony is that it runs afoul of our stated policy requiring that expert witnesses be first tendered as such before being allowed to express expert opinions. Roberson v. State, 569 So.2d 691, 696 (Miss. 1990). To sanction this testimony attempts to circumvent this policy by the familiar retreat to Miss.R.Evid. 701, which some attorneys would use to justify all transgressions of our discovery and evidentiary policies concerning expert opinion.
There is a bright line rule. That is, where, in order to express the opinion, the *530 witness must possess some experience or expertise beyond that of the average, randomly selected adult, it is a Miss.R.Evid. 702 opinion and not a Rule 701 opinion. Mississippi State Highway Commission v. Gilich, 609 So.2d 367, 377 (Miss. 1992) (lay opinions are those which require no specialized knowledge however attained); Seal v. Miller, 605 So.2d 240, 244 (Miss. 1992) (question calling on police officer to respond based on experience as an officer investigating accidents is by definition not a lay opinion.) Wells v. State, 604 So.2d 271, 279 (Miss. 1992) ("[I]f particular knowledge ... is necessary to assist the trier of fact ... then such testimony would never qualify as a lay witness opinion under M.R.E. 701.")
It is important that we not blur the distinction between Rules 701 and 702, not so much for admissibility, as for notice and opportunity to prepare rebuttal. Expert testimony and opinions are subject to special discovery rules in both the civil and criminal arenas. Miss.R.Civ.P. 26(b)(4); Unif.Cr. R.Cir.Ct. 4.06(a)(4). This Court has also adopted a policy which dictates that Rule 702 witnesses be offered as such before offering Rule 702 testimony. Roberson v. State, 569 So.2d at 696. This policy allows the opposing party ample opportunity to challenge the witness' qualifications to render such opinion before the question soliciting opinion is posed in front of the jury.
Corr was allowed to express his opinions concerning the value, normal street usage and customary packaging of marijuana based upon his training and experience as a narcotics officer. He was, therefore, a Rule 702 expert. Wells v. State, 604 So.2d at 279. Under this Court's policy, he should have been tendered as such to have his qualifications tested through voir dire before being allowed to offer the expert opinions. Roberson v. State, 569 So.2d at 696. Corr was not so tendered and, in the failure to require that procedure, the court erred. On retrial, this procedure should be followed.

5. The Sufficiency of the Evidence
Sample assails the legal sufficiency of the State's evidence used to convict him of marijuana possession with the intent to distribute that substance to others. Because a retrial is mandated by this reversal, this Court does not comment upon the legal sufficiency of the evidence.

III. CONCLUSION

This conviction and sentence is reversed and remanded on the charge of possession of marijuana with intent to distribute to others.
REVERSED AND REMANDED FOR A NEW TRIAL.
HAWKINS, C.J., and SULLIVAN and BANKS, JJ. concur.
DAN M. LEE, P.J., concurs in results only.
McRAE, J., dissents with separate written opinion.
SMITH, J., dissents with separate written opinion joined by PITTMAN and JAMES L. ROBERTS, Jr., JJ.
McRAE, Justice, dissenting:
I write to note my disagreement with the majority's holding that the trial judge did not abuse his discretion in granting the State's motion in limine. I would not do so but for the fact that the same majority just recently rendered an opposite view and now attempts to reinterpret its opinion. Pursuant to our holding in Daniels v. Wal-Mart, 634 So.2d 88 (Miss. 1993), the civil forfeiture proceeding should have been allowed to be introduced into evidence. The civil proceeding clearly had probative value which outweighed any tendency to mislead, confuse or prejudice the jury. Accordingly, I dissent.
Before the State initiated the criminal suit against Sample, it unsuccessfully brought a civil suit against Sample seeking a forfeiture of the money recovered inside Sample's vehicle at the time the illicit drugs were seized. The trial court held that the State failed to present evidence refuting Sample's claim that he legitimately obtained the money. At trial, the prosecutor sought to prevent Sample from introducing the civil judgment into evidence. The circuit court granted the motion *531 in limine, thus prohibiting Sample from even mentioning the previous civil judgment.
In Daniels, this Court allowed a civil youth court adjudication of delinquency to be introduced into evidence in a later case where the adjudicated delinquent brought suit against Wal-Mart for assault and battery, excessive force and slander. Daniels, 634 So.2d at 92. Both suits involved the same incident and same set of facts. We held:
[I]t is imperative that the truth be ascertained. To do so mandates that evidence presented in the youth court proceedings be allowed to be introduced at Daniels' slander suit. Since the truth is a total defense to a slander suit, it only seems equitable that Wal-Mart be allowed to use this evidence in its defense.
Id. at 93. We allowed Daniels' youth court records to be released even though Miss. Code Ann. § 43-21-259 (1972) requires confidentiality in youth court proceedings. The order which released the records contained the extraneous finding that the facts were the same in both cases. We reasoned that Daniels' commencing suit against Wal-Mart lifted the veil of confidentiality. However, in the case sub judice where there is no statute providing for confidentiality, the majority inconsistently holds that the motion in limine was properly granted.
The majority cross-references Daniels, but provides that it stands "only for the narrow proposition that a juvenile adjudication is admissible on the issue of character where that trait is at issue, such as, for example, in a slander suit." This simply is not true as evidenced by the majority's statement in Daniels, "[T]he veil of confidentiality given youth court proceedings can be lifted, thereby allowing evidence from the proceedings to be introduced in a civil trial when the plaintiff youth court offender initiates a suit stemming from the same incident." Id. at 90. The majority in Daniels never confines its holding to matters where the same trait is at issue, but rather, limits its decision to suits where the same set of facts exist, such as the case at hand.
In Daniels, the majority found that the order met the requirements of M.R.E. 402 & 403, but, in the case at hand, the majority inconsistently holds that "any probative value possessed by the civil judgment was substantially outweighed by the danger of confusing the issues or misleading the jury." The majority opines that any introduction of the forfeiture into the case would have confused the issues and "the fact the trial judge did not require Sample to forfeit a certain sum of money found inside his automobile would not have a tendency to make more or less probable his innocence of marijuana or cocaine possession." To the contrary, the fact that the trial judge did not require Sample to forfeit money obtained from him during the drug seizure was relevant evidence and would have made his innocence more or less probable without confusing the issues. The State could have easily withheld from commencing the civil trial until the criminal trial was concluded had it wanted no mention of the civil trial. In Daniels, we held that he could not "bring the incident to court and expect to present only part of the picture. Justice requires a total view." Daniels, at 93. The case at hand ought to be consistent with our recent holdings, and I am fearful that it is not. Accordingly, I dissent.
SMITH, Justice, dissenting:
I disagree that there is any basis for reversing the conviction of Sample and would affirm his conviction of possession of marijuana with the intent to distribute. I therefore dissent.
Officer Dedeaux testified as to his reason for being in the area of the Shaws' residence and for being suspicious of the black Camaro. Defense counsel objected to "receiving dispatches" as "clearly hearsay." The State's argument was that this testimony was not offered for the truth of the matter asserted and therefore not hearsay.
Whatever objection defense counsel may have had to the testimony about the black Camaro was clearly waived by the subsequent cross-examination of Officer Dedeaux wherein defense counsel asked the following series of questions:
Q. You recall testifying at a previous hearing, don't you?
A. Sure do.

*532 Q. In December. Do you recall what you said that  checked my notes, you testified that this type of Camaro was a highly stolen car?
A. That's right.
* * * * * *
Q. And you checked the tag because of this profile of it being stolen very often?
A. Right.
Q. Do you remember at that hearing you never testified about a BOLO?
A. I wasn't asked.
Dedeaux's testimony about the shooting a week earlier in the area of the Shaws' residence was never connected to Sample in any way. The Shaws' residence was one of three houses near each other. Dedeaux indicates in his testimony that Sample was seen at the house trailer of Mr. Shaw's son and not at Mr. Shaw's residence itself. There would be no reason to infer that Sample was involved in any possible crime from being seen nearby a week later. Although this testimony is characterized as hearsay, there is nothing to indicate that Dedeaux did not have personal knowledge of the shooting incident. He testified, "They had a shooting there about a week before," without indicating the source of his knowledge.
Dedeaux's testimony gave a complete story as to his reason for being in the area and for his subsequent arrest of Sample. The reason for explaining in detail why the officer acted as he did was to show to the jury that Sample's arrest was not random and capricious but based on reasonable suspicion. As the comment to Rule 801, M.R.E. states: "If the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then, the statement is not hearsay."
I fail to see how this testimony from the arresting officer would be irrelevant and prejudicial.
I also find no fault in the testimony from Officer Corr. Until now, it has not been the rule in Mississippi courts that a police officer had to be qualified as an expert in order to give testimony on factual matters within his knowledge. The testimony elicited was not significantly different from that in other drug related cases. As per Rule 701, Corr's testimony was "rationally based on the perception of the witness." This is "the familiar requirement of first-hand knowledge or observation." Comment, Rule 701, M.R.E. That is precisely what Corr's testimony was.
In Wells v. State, 604 So.2d 271, 279 (Miss. 1992), this Court stated:
A layperson is qualified to give an opinion because he has first-hand knowledge which other laypeople do not have. According to Wigmore, a lay witness opinion comes from one who concededly has no greater skill than a juror in drawing inferences from the evidence in question. 7 Wigmore, Evidence § 1924 (1978). By comparison, the expert has "something different" to contribute. 3 McCormick on Evidence 33 (E. Cleary ed. 1984).
Corr's testimony as to the street value of an ounce of marijuana, that marijuana was purchased in quarter gram quantities and that the quantity possessed by Sample was more than the common user would possess was first-hand factual knowledge which other laypeople might not possess. This testimony did not require any skill beyond that of what the majority calls "the average, randomly selected adult" with the first-hand factual knowledge as the officer.
Why this case? Why now? In several cases, police officers as lay witnesses have given similar testimony. For example, in Jackson v. State, 580 So.2d 1217, 1219 (Miss. 1991), "Officer Blackley testified that in his experience a user normally purchased only one or two nickel bags as opposed to the six found in Jackson's possession." In Stringer v. State, 557 So.2d 796, 798 (Miss. 1990), "one of the arresting officers testified that of the many T's and Blues related arrests he has made in the past, more suspects than not carried less than twenty sets."
Previously, the expert witness rule, Rule 702, was designed to permit persons with helpful scientific, technical or other specialized knowledge to testify and assist the jury in determining an issue in the case. For example, in Roberson v. State, 569 So.2d 691 (Miss. 1990), this Court held that a police officer could not testify as a lay witness as to *533 the age of a fingerprint. This was clearly beyond the officer's personal knowledge unless he had seen the fingerprint being made.
The majority's new, hyper-technical approach to police officer testimony adds nothing meaningful to our procedure and should not be adopted.
Since I find no error in allowing the police officers' testimony in the context of this case, I would affirm fully the verdict and sentence in this case. I respectfully dissent.
PITTMAN and JAMES L. ROBERTS, Jr., JJ., join this opinion.
NOTES
[1] Cf. Daniels v. Wal-Mart Stores, Inc., 634 So.2d 88 (Miss. 1993). A youth court order adjudicating a minor to be a delinquent was held admissible in a subsequent civil trial. The situation in that case is distinguishable from the instant case in that in this case a civil adjudication is sought to be admitted in a later criminal trial. More importantly, Daniels stands only for the narrow proposition that a juvenile adjudication is admissible on the issue of character where that trait is at issue, such as, for example, in a slander suit.