# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-KA-00675-SCT

*SAPIREYA SMITH a/k/a SAPERIYA SMITH*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/02/2024 |
| TRIAL JUDGE: | HON. LEE JACKSON HOWARD, V |
| TRIAL COURT ATTORNEYS: | WILLIAM PAUL STARKS, II |
| | SCOTT WINSTON COLOM |
| | LEOGHAIN STRNAD FAIR |
| | JAY HOWARD HURDLE |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: AMBER L. STEWART |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JULIANNE BAILEY |
| DISTRICT ATTORNEY: | SCOTT WINSTON COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/04/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., CHAMBERLIN AND SULLIVAN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     Sapireya Smith was convicted of aggravated assault after hitting Denise Neely in the head with a frying pan. Smith appeals her conviction and argues that error occurred at trial when improper lay testimony was given by two of Neely's treating physicians. Smith failed to object to this testimony at trial but argues that it was plain error and amounted to ineffective assistance by her trial counsel. This Court finds no reversible error and affirms

Smith's conviction.

## FACTS AND PROCEDURAL HISTORY

¶2. On Tuesday, August 17, 2021, Smith and her boyfriend, Donye Cannon, were cooking breakfast in the kitchen of the apartment that Smith leased with her brother Devontae Smith. Devontae and his wife, Neely, entered the apartment to gather Devontae's belongings. Devontae and Neely had been living separately, but Devontae was moving back into Neely's house to try to reconnect and make their marriage work.

¶3. Upon entering the apartment, Neely and Smith began arguing. Smith did not want Neely in the apartment, and Neely felt that she was entitled to be in the apartment to assist Devontae with the removal of his personal belongings. The fighting escalated with both women becoming increasingly irritated. Eventually, Smith went to the kitchen, grabbed a frying pan and used it to hit Neely.

¶4. Neely testified at trial that upon entering the apartment she went to sit on the couch in the living room. Neely stated that Smith began yelling at her from the kitchen and eventually came into the living room, "screaming, yelling, [and] threatening" her. Smith and Devontae allegedly told Neely to get off the couch. Neely moved from the living room to stand by the front door near the stairs when Cannon allegedly walked toward her and hovered over her. Devontae was upstairs at this time.[1] Neely testified that Smith went into the kitchen and came back into the living room screaming and holding "a pot like you boil eggs with" in her hand. Neely stated that she was unarmed and that Smith walked up behind

_____

[1]Neely stated that she could not go upstairs due to a preexisting knee injury.

2

Cannon, reached over his shoulder and hit her three times with the pot—once above the eye, once on the right side of her head and once on "the left side." Neely testified that by the third hit she was able to put her hand up and knock the pot out of Smith's hand. Neely said she struggled over to a chair where she sat down, and Devontae came down the stairs and held Smith off of Neely. Neely stated that there was blood "everywhere" and that she and Devontae left the apartment. Neely and Devontae then went to the apartment leasing office to call an ambulance, and Neely was transported to the hospital. Neely had a CT scan, fifteen stitches and eventually facial surgery.

¶5. Smith testified at trial that Neely came into the apartment, called Smith a "little boy" and that Smith responded, "I told her to get her fat self out of my house." Similar to Neely's version of the events, Smith testified that the fighting escalated from verbal to physical, but Smith stated that Neely started the physical fight. Smith admitted that she threw the pan at Neely but maintained that she never beat Neely with the pan. Smith stated that the police arrived at her apartment after the altercation and took the frying pan. A photo of a damaged frying pan was presented to the jury.

¶6. Cannon also testified for the defense. Cannon stated that when Neely came into the apartment that morning and insulted Smith, Smith began screaming at Neely, and Neely refused to leave the apartment. Cannon stated that he took Smith to the kitchen to attempt to calm her down and that Neely followed them to the kitchen. Neely then began pulling Cannon by the head and hair, and Cannon stated that he did not know what to do other than push past Neely and leave the apartment. Cannon stated that he did not see who started the

3

fight, that he did not see anyone with a frying pan and that he did not attack Neely.

¶7. The State called two of Neely's treating physicians to testify as lay witnesses. Kim Truesdale, a family nurse practitioner, treated Neely's injuries when she entered the emergency room at the Oktibbeha County Hospital Regional Medical Center. Michael Bueller,[2] a radiologist at the hospital, performed and reviewed Neely's CT scans. Neely's medical records, including Bueller's two radiology reports, were introduced into evidence without objection and used to question the two physicians.

¶8. The jury convicted Smith of aggravated assault, and she was sentenced to ten years. Smith appealed.

## ISSUES PRESENTED

I. Whether Smith was prejudiced by improper lay opinion testimony from Neely's treating physicians.

II. Whether Smith received ineffective assistance of counsel when her trial attorney failed to object to the lay opinion testimony offered by Neely's treating physicians.

## STANDARD OF REVIEW

¶9. This Court reviews the admission or exclusion of evidence for abuse of discretion. *Collins v. State*, 172 So. 3d 724, 738-39 (Miss. 2015) (quoting *Palmer v. State*, 939 So. 2d 792, 794 (Miss 2006)). Smith, however, did not object at trial to the introduction of the two physicians' testimony, and she now argues the admission of the testimony was plain error. "For the plain-error doctrine to apply, there must have been an error that resulted in a

---

[2]The parties and the trial transcript use the spelling "Bueller," while Neely's medical records use the spelling "Buehler." This Court will use the spelling chosen by the parties.

4

manifest miscarriage of justice or 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Conners v. State*, 92 So. 3d 676, 682 (Miss. 2012) (alteration in original) (quoting *Brown v. State*, 995 So. 2d 698 (Miss. 2008)). "The plain error rule will only be applied when a defendant's substantive or fundamental rights are affected." *Flora v. State*, 925 So. 2d 797, 811 (Miss. 2006) (citing *Grubb v. State*, 584 So. 2d 786, 789 (Miss. 1991)).

¶10.    This Court typically would not review Smith's ineffective-assistance-of-counsel claim on direct appeal. *See Bell v. State*, 202 So. 3d 1239, 1242 (Miss. 2016) ("Because appellate courts are limited to the trial record on direct appeal, 'generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings.'" (quoting *Dartez v. State*, 177 So. 3d 420, 422-23 (Miss. 2015))). This Court will address this issue on direct appeal "only where '[1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc.[,] are not needed.'" *Id.* (alterations in original) (quoting *Read v. State*, 430 So. 2d 832, 841 (Miss. 1983)). "This Court has also resolved ineffective-assistance-of-counsel claims on direct appeal when the record affirmatively shows that the claims are without merit." *Ross v. State*, 288 So. 3d 317, 324 (Miss. 2020) (citing *Swinney v. State*, 241 So. 3d 599, 613 (Miss. 2018); *Ashford v. State*, 233 So. 3d 765, 779-81 (Miss. 2017); M.R.A.P. 22).

## DISCUSSION

I.    **Whether Smith was prejudiced by improper lay opinion testimony from Neely's treating physicians.**

5

¶11.    Smith contends that Neely's physicians provided expert testimony without being certified as expert witnesses. Both Truesdale and Bueller were called as lay witnesses. They provided the jury with their educational backgrounds and their medical qualifications and then proceeded to tell the jury their observations and opinions from their treatment of Neely. Smith argues that she was prejudiced by their testimony because without their testimony, the evidence tends to support a conviction of simple assault over aggravated assault.

¶12.    Mississippi Rule of Evidence 701 provides that a witness who is not an expert may testify "in the form of an opinion" on information that is "**(a)** rationally based on the witness's perception; **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and **(c)** not based on scientific, technical or other specialized knowledge within the scope of Rule 702." MRE 701. Mississippi Rule of Evidence 702 provides for the introduction of expert testimony that is based on scientific, technical or other specialized knowledge. "[W]here, in order to express the opinion, the witness must possess some experience or expertise beyond that of the average, randomly selected adult, it is a M.R.E. 702 opinion and not a Rule 701 opinion." *Cotton v. State*, 675 So. 2d 308, 311 (Miss. 1996) (alteration in original) (internal quotation marks omitted) (quoting *Sample v. State*, 643 So. 2d 524, 530 (Miss. 1994)). "It is reversible error to allow expert testimony from a witness never qualified or tendered as an expert." *Id.* (citing *Roberson v. State*, 569 So. 2d 691, 696 (Miss. 1990)).

¶13.    Despite these general rules against expert testimony disguised as lay testimony, this Court has provided further specific guidance on lay testimony from a treating physician. We

have stated that

> [a] physician can testify without being accepted as an expert regarding: 1) "the facts and circumstances surrounding the care and treatment of the patient"; 2) "what his records about the patient reveal"; and 3) "what conditions the patient was suffering from if the opinion was acquired during the care and treatment of the patient." However, a physician cannot testify about the significance of a patient's condition or industry standards without first being accepted as an expert.

*Chaupette v. State*, 136 So. 3d 1041, 1046 (Miss. 2014) (footnotes omitted) (citations omitted).

¶14. Smith contends that Neely's physicians testified to the significance of Neely's injuries. Specifically, Smith points to the following testimony elicited from Truesdale:

Q. And what were the results?

A. The CT of the face showed an orbital bone fracture that intruded into the sinuses and that – that type of fracture where it enters – it's opened up into the sinus cavity sets up a very high risk for infection.

Q. And in your records, there's an entry called "mechanism of injury" and it indicates something of a blunt force trauma. Was this injury consistent with a blunt force trauma?

A. It was.

Q. And was it consistent with being struck by a frying pan?

A. Yes.

Q. And what was the severity of the injury?

A. It was very severe injury as far as the fracture she sustained, plus the large, deep laceration to her forehead.

Q. And if left untreated, what could be some of the results?

A. Well, if left untreated – like I previously stated – that any intrusion into

7

the sinus cavity from an orbital fracture runs a very high risk of infection and should infection set[ ]up, then that has terrible consequences as far as involving the face, even leading up to a septic situation if not treated.

Smith contends that this testimony shows that Truesdale was asked to testify to the significance of Neely's injuries.

¶15. The majority of Truesdale's testimony was based upon her observation and treatment of Neely. Upon entering the emergency room, Neely provided Truesdale with the version of the events that led to the injury. Neely told Truesdale that she was hit in the face with a frying pan. Based on these facts, Truesdale did a physical assessment, ordered CT scans and eventually recommended a maxillofacial surgeon to Neely. Truesdale's opinions on the treatment, observations and diagnosis of Neely are appropriate lay witness testimony.

¶16. Smith argues that "Truesdale's opinion on the CT results" transforms her testimony from lay witness testimony into expert testimony. Smith argues that Truesdale could only have known the injury to be consistent with blunt-force trauma based on her specialized knowledge. While that may be true, this Court allows treating physicians to testify about "1) 'the facts and circumstances surrounding the care and treatment of the patient'; 2) 'what his records about the patient reveal'; and 3) 'what conditions the patient was suffering from if the opinion was acquired during the care and treatment of the patient.'" *Id.* (quoting *Griffin v. McKenney*, 877 So. 2d 425, 439-40 (Miss. Ct. App. 2003)). Truesdale knew the facts and circumstances surrounding the injury because Neely entered the emergency room and told her she had been hit in the face with a frying pan. Truesdale could testify that the injury was consistent with what the patient, Neely, said happened.

8

¶17.   This Court finds, however, that Truesdale's opinion impermissibly exceeded the limits of lay opinion testimony when she testified about potential side effects of the injury, although for a different reason than that submitted by Smith on appeal.  A closer analysis of the Court's prohibition on lay testimony from a treating physician as to the "significance of a patient's condition" is necessary.  *Id.* (citing *Foster v. Noel*, 715 So. 2d 174, 183 (Miss. 1998)).

¶18.   This Court relied on *Foster* as authority for its statement in *Chaupette* that "a physician cannot testify about the significance of a patient's condition . . . without first being accepted as an expert."  *Id.* (citing *Foster*, 715 So. 2d at 183).  *Foster* is a Mississippi Tort Claims Act case in which Jacqueline Noel sued a Yazoo City police officer, among others, for "false arrest and emotional and mental distress."  *Foster*, 715 So. 2d at 176. In *Foster*, a doctor was permitted to testify as a treating physician but not as an expert witness about "his care and treatment of Noel on the night of her arrest."  *Id.* at 183.  The doctor stated "that Noel suffered from a pre-existing condition of depression[.]" *Id.*  The doctor had on a prior occasion treated Noel and was familiar with some of her medical history.  *Id.* at 176. The Court stated that "the revelation that Noel had a pre-existing condition did not constitute impermissible expert opinion as he did not testify about the *significance* of her depression and the effect the acute anxiety she suffered as a result of being arrested would have on her condition in the future."  *Id.* at 183 (emphasis added).

¶19.   The doctor in *Foster* did, however, provide impermissible expert testimony "when he stated that the arrest exacerbated Noel's pre-existing depression." *Id.*  This testimony was

9

impermissible because it explained how her medical condition of depression was significant to the claims of that case. *See Chaupette*, 136 So. 3d at 1051 (Chandler, J., concurring in part and in result). Nevertheless, the Court found the error was harmless considering other witnesses had testified to the emotional toll of her false arrest and that the doctor would not say whether Noel would need increased medical treatment because of the arrest. *Foster*, 715 So. 2d at 183.

¶20. Unlike the doctor in *Foster*, Truesdale's testimony regarding a possible infection did not explain to the jury how Neely's injuries were significant to a claim of aggravated assault, being "bodily injury . . . with a deadly weapon or other means likely to produce death or serious bodily harm[.]" Miss. Code Ann. § 97-3-7(2)(a) (Rev. 2020). Truesdale's lay opinion testimony, however, is impermissible because it was not based on her observation of Neely's current condition. Although *Chaupette* allows a treating physician to testify to "what conditions the patient was suffering from[,]" Truesdale's testimony strayed into technical knowledge as to what conditions Neely could suffer from if her injuries were left untreated. *Chaupette*, 136 So. 3d at 1046 (internal quotation mark omitted) (quoting *Griffin*, 877 So. 2d at 439-40). Her opinion that an infection could occur and have "terrible consequences" such as sepsis was based on her medical knowledge, not her observation of Neely's physical symptoms.[3] Such testimony is clearly prohibited by *Chaupette*.

---

[3]Our court of appeals addressed similar lay opinion testimony in *Griffin*, 877 So. 2d at 441 when a physician was allowed to provide lay testimony to potential symptoms that a patient could have exhibited in a hypothetical scenario. The patient had not exhibited the symptoms that the doctor had described. *Id.* The court found that this testimony strayed "into the realm of expert testimony" but did not warrant reversal. *Id.*

¶21. Smith, however, failed to object to the introduction of the testimony at trial. Neely's medical records were submitted without objection, Neely testified about the severity of her injuries without objection, and photos of the deep laceration on Neely's forehead were introduced without objection. Truesdale's testimony that Neely's injuries, if left untreated, could result in infection, was harmless error. There was overwhelming evidence to support a verdict of aggravated assault—that Smith "did purposely, knowingly, and feloniously cause or attempt to cause bodily injury to Denise Neely, with a deadly weapon, or other means likely to produce death or serious bodily harm[.]"

¶22. Smith also presents as error the following testimony from Bueller:

Q:     And how would you classify this injury as far as severity.

A.     It's – I mean, it's fairly severe. You know, as I'm indicating here – I don't know, you know, the disposition of the patient exactly or what went on from Oktibbeha County, but I mean, to me, it's a significant fracture that needs referral to a surgeon. You know, whether they do surgery or not would be – you know, that's not my decision, but clearly it does need referral to either an ENT surgeon or a neurosurgeon to be evaluated, at least.

Bueller's testimony further included an explanation of his notes in Neely's medical records and an explanation of why he referred to Neely's injuries on at least two occasions as a "significantly" depressed fracture. Smith takes issue with Bueller's use of the term "significantly" and argues that Bueller's testimony is "almost fully an expert opinion" because it is based "off the patient's disposition" and "his own expertise in knowing that the injury would need to be referred[.]"

¶23. This Court finds that Bueller's testimony was permissible lay opinion testimony. He

11

provided his opinion based on the CT scan and merely discussed his notations in the medical records. While Bueller used the term "significantly" to describe Neely's injury, this Court has not prohibited doctors from using this descriptor. The rule of law expressed in *Chaupette* and derived from *Foster* was not a prohibition against a specific word, but, as this Court has discussed, it was a caution against allowing a doctor to expand their testimony beyond the observation and treatment of their patient. Further, Bueller read this term directly from the medical records, which were introduced without objection. Bueller's testimony was based on his observations and treatment of Neely. No error occurred.

II. **Whether Smith received ineffective assistance of counsel when her trial attorney failed to object to the lay opinion testimony offered by Neely's treating physicians.**

¶24. Smith requests this Court to review her claim of ineffective assistance of counsel on direct appeal because her claims show "ineffectiveness of constitutional dimensions." *Bell*, 202 So. 3d at 1242 (quoting *Read*, 430 So. 2d at 841). The State neither requests that this Court address the claim or save the claim for post-conviction proceedings. This Court will review Smith's claim because "the record affirmatively shows" that it is without merit. *Ross*, 288 So. 3d at 324 (citing *Swinney*, 241 So. 3d at 613; *Ashford*, 233 So. 3d at 779-81; M.R.A.P. 22).

¶25. Smith's claim is that her attorney was ineffective for failing to object to Neely's treating physicians' testimony. "This Court has been clear that 'counsel's choice whether to make certain objections fall within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim." *Turner v. State*, 366 So. 3d 855, 861 (Miss. 2023)

12

(quoting *Bell v. State*, 879 So. 2d 423, 440 (Miss. 2004)). Further, Smith's attorney, during cross-examination, asked Truesdale about Neely's height and weight. Truesdale testified that based on the medical records, Neely was approximately five feet four inches and that she weighed around three hundred pounds. This testimony supported Smith's self-defense claim based on the argument that Neely's physical size contributed to the animosity and that Smith felt threatened by Neely. While Bueller's testimony was not used to support any of Smith's defenses, the failure to object to his testimony did not result in constitutionally ineffective assistance of counsel. The introduction of Bueller's testimony was not error. Smith's claim is without merit.

## CONCLUSION

¶26.  Smith's conviction is affirmed.

¶27.  **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., MAXWELL, ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**