`IN THE SUPREME COURT OF MISSISSIPPI

NO. 2012-KA-01464-SCT

*TROY CHAUPETTE a/k/a TROY W. CHAUPETTE*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 06/01/2012 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | PHILLIP W. BROADHEAD |
| | THOMAS FORTNER |
| | THOMAS SCHWARTZ |
| | JOHN A. HOWELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/06/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     Troy Chaupette was convicted of fondling his four-year-old great-niece.  He appeals

his conviction, alleging the trial court erred by: 1) allowing two fact witnesses to provide

expert testimony; 2) permitting an improper comment on the victim's truthfulness; and 3)

admitting cumulative, hearsay testimony from six witnesses under the tender-years exception.

Finding no reversible error, we affirm the judgment of the Pearl River Circuit Court.

## FACTS AND PROCEDURAL HISTORY

¶2.    Following Hurricane Katrina, Troy Chaupette and his mother lived with his niece, Ann, and her four-year-old daughter, Claire, in a home owned by his sister and Ann's mother, Ellen.[1,2]  On October 16, 2005, Claire repeatedly hit her mother in the vagina while saying "what's that, what's that."[3]  Concerned, Ann asked Claire where she had learned that behavior.  Claire replied "Uncle Troy" and told Ann that

> [Troy] came and got her out of bed one night, brought her into the bathroom
> and sat her on the toilet and scooted her down and placed one hand in his pants
> and the other hand – his finger into her vagina, what she called a mini cat . .
> . . And then when he was done, he brought her back into [Ann's] room and
> placed her in the bed and told her not to tell her mom, go back to sleep.[4]

Claire also reenacted the event.  After Claire fell asleep, Ann called Ellen, who advised her to lock the bedroom door and volunteered to contact the necessary authorities.  In the morning, Ellen called the Department of Human Services (DHS).[5]  Lilly Crawford, a social

---

[1]Fictitious names have been used for the minor victim and her family members to protect the identity of the victim.  Members of the Chaupette family will be referred to by first name to avoid confusion.

[2]Ellen and her husband, George, were living in Houston, Texas, at the time of the alleged abuse.

[3]There was also evidence at trial that Claire hit herself in the vagina while saying "what's that, what's that."

[4]Claire had her own room but slept in the bed with Ann.

[5]Troy moved out of Ellen's house shortly after the incident.

worker with DHS, interviewed Claire two days later. During her interview, Claire told Crawford that

> [H]er Uncle Troy had touched her mini, meaning her vagina area, with his finger. She held up her index finger showing [Crawford] which finger. When [Crawford] asked her whether or not the uncle touched her over her clothes or under her clothes, she stated that he touched her on the inside of her clothes that she was wearing. She stated that she was on the toilet when the incident occurred and that she had been sleeping. She stated that her mama was asleep at the time of the incident. She stated that no one else had ever touched her like that before. She also stated that the uncle didn't hurt her at that time.

Crawford also interviewed Ann and Ellen. Based on Crawford's interviews, DHS turned the case over to law-enforcement authorities. The day after their DHS interviews, Ann took Claire to see her pediatrician, Dr. Johanna Dupont. Dr. Dupont conducted an external examination of Claire's genitalia and found no physical injury. However, based on her discussion with Ann and Claire, she diagnosed Claire as being sexually abused. On November 11, 2005, Ann filed a molestation report with the Picayune Police Department. As a result, Officer Monica Jacobsen interviewed Claire, Ann, Ellen, and Troy. During her interview, Claire identified her vagina area as her "mini" and told Officer Jacobsen that "[h]er Uncle Troy came into the bedroom, told her it was wake-up time and picked her up from the bed, brought her into the bathroom and sat her on the potty and touched her mini." Claire also provided details regarding the color of the bathroom and what she was wearing at the time of the abuse. Following her investigation, Officer Jacobsen concluded that there was sufficient evidence to forward the case to the grand jury.[6] In December 2005, Claire began receiving therapy from Deslie Banano. During therapy, Claire told Banano "[Uncle

---

[6]Troy was indicted on December 7, 2006.

Troy] touched my mini. And while she did that, she pointed to her vagina. She said that he had brought her into the bathroom while her mommy was sleeping and had touched her "mini."

¶3.     In addition to these witnesses, both Claire and Troy testified at trial. Claire identified Troy and testified that "[h]e got me out of my mom's bed and brought me to the bathroom while I was asleep . . . I woke up and I saw he touched my private part . . . [with] his finger."[7] Troy denied all the allegations against him and suggested that Ellen, his sister, made the allegations up because she was angry at him for talking to her ex-best friend. He also mentioned that he had participated in the investigation and that he consistently had denied all the allegations against him.[8]

¶4.     Troy was convicted of one count of child-fondling and received a fifteen-year prison sentence. Troy timely appealed and raised the following issues, which have been restated for purposes of clarity:

> I.      Claire's pediatrician and therapist were allowed to provide expert testimony without satisfying the requirements of Rule 702 of the Mississippi Rules of Evidence.
>
> II.     Claire's therapist was allowed to comment improperly on her truthfulness.
>
> III     Hearsay testimony from six witnesses admitted under the tender-years exception was cumulative and unfairly prejudicial.

---

[7]At trial, she could not remember whether Troy touched her private part underneath or on top of her clothes.

[8]Troy's testimony was corroborated in part by that of Officer Jacobsen, who acknowledged on cross-examination that Troy had cooperated during her interview of him and had maintained his innocence.

4

¶5.     Finding no reversible error, we affirm the judgment of the Pearl River Circuit Court.

## LAW AND ANALYSIS

### I.      Expert Testimony from Dupont and Banano

¶6.     Dr. Johanna Dupont, a pediatrician, and Deslie Banano, a psychotherapist, testified as witnesses for the State regarding their treatment of Claire. It is undisputed that neither was tendered as an expert witness. At trial, Troy objected to Dr. Dupont's diagnosis testimony and Banano's treatment testimony, claiming both were providing impermissible expert testimony without first being presented as experts. He raises the same argument on appeal.

¶7.     A trial court's admission of testimony is reviewed for an abuse of discretion.[9] "We give great deference to the discretion of the trial judge," and "unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion, [the trial judge's] decision will stand."[10] Moreover, we "may reverse a case only if, the admission or exclusion of evidence results in prejudice and harm or adversely affects a substantial right of a party."[11]

¶8.     "There is often a very thin line between fact and opinion" testimony.[12] We find Dupont's testimony crossed the line from fact to opinion testimony when she offered her diagnosis of Claire. The question presented is whether this was a lay opinion pursuant to

---

[9] **Foster v. Noel**, 715 So. 2d 174, 181 (Miss. 1998); *see also* **Carter v. State**, 996 So. 2d 112, 116 (Miss. Ct. App. 2008).

[10] **United American Ins. Co. v. Merrill**, 978 So. 2d 613, 631 (Miss. 2007).

[11] **Id.** at 633 (internal quotations omitted) (citing **Blake v. Clein**, 903 So. 2d 710, 723 (Miss. 2005)).

[12] **Sample v. State**, 643 So. 2d 524, 530 (Miss. 1994).

5

Rule 701 or an expert opinion governed by Rule 702.[13] Before providing expert opinion testimony, a witness must be qualified, tendered, and accepted as an expert under Rule 702 of the Mississippi Rules of Evidence.[14] In contrast, lay witnesses can provide opinion testimony only if it is "rationally based on the[ir] perception . . . [and] helpful to the clear understanding of the testimony or the determination of a fact in issue."[15] But if an opinion is based on scientific, technical, or other specialized knowledge, it can be admitted only under the guidance of Rule 702 as an expert opinion.[16] An opinion is based on "scientific, technical, or other specialized knowledge" if " the witness must possess some experience or expertise beyond that of the average randomly selected adult " to express the opinion.[17] A physician can testify without being accepted as an expert regarding: 1) "the facts and circumstances surrounding the care and treatment of the patient"; 2) "what his records about the patient reveal"; and 3) "what conditions the patient was suffering from if the opinion was acquired during the care and treatment of the patient."[18] However, a physician cannot testify

---

[13]Miss. R. Evid. 701, 702.

[14]*Cotton v. State*, 675 So. 2d 308, 312 (Miss. 1996) (citing *Roberson v. State*, 569 So. 2d 691, 696 (Miss. 1990)).

[15]Miss. R. Evid. 701.

[16]*See* Miss. R. Evid. 701 cmt. (stating "[t]he 2003 amendment of Rule 701 makes it clear that the provision for lay opinion is not an avenue for admission of testimony based on scientific, technical or specialized knowledge which must be admitted only under the strictures of Rule 702.")

[17]*Langston v. Kidder*, 670 So. 2d 1, 3-4 (Miss. 1995).

[18]*Griffin v. McKenney*, 877 So. 2d 425, 439-40 (citing *Scafidel v. Crawford*, 486 So. 2d 370, 372 (Miss. 1986)).

about the significance of a patient's condition[19] or industry standards[20] without first being accepted as an expert. Troy argues that Dupont's diagnosis testimony and Banano's treatment testimony entered into the realm of expert testimony.

A.    Dr. Johanna Dupont

¶9.    Troy challenges the trial court's ruling which allowed Dr. Dupont to state that she had diagnosed Claire as sexually abused. The disputed testimony during Dr. Dupont's direct examination reads:

> Q.    You performed an external superficial exam on Claire Chaupette; is that correct?
> A.    Yes.
> Q.    Okay. And what were your findings as to that exam?
> A.    She had no apparent injury or abnormality on her genital exam.
> Q.    Okay. And based on the history of her present illness and your patient history and your external exam of her genitalia, where you able to come up with a diagnosis?
> A.    Yes.
> Q.    And what was your diagnosis?
> . . .
> A.    Sexual abuse.

Dr. Dupont also was allowed to restate her diagnosis on redirect:

> Q.    Okay. Dr. Dupont, even though your external exam shows no injury or bruising, you still made a diagnosis of sexual abuse; is that correct?
> . . .
> A.    There's no physical finding. No physical findings
> . . .
> Q.    And you came up with a diagnosis in this case; is that correct?
> A.    Yes.
> Q.    And what was your diagnosis?
> A.    Sexual abuse.

---

[19] *Foster v. Noel*, 715 So. 2d 174, 183 (Miss. 1998).

[20] *Langston v. Kidder*, 670 So. 2d 1, 4 (Miss. 1995).

¶10. Clearly, Dupont's diagnosis was an opinion, and, as she stated, it was based on the patient history taken, as well as Dupont's physical examination of Claire. Her opinion no doubt was based on her specialized knowledge, which can be presented only under the strictures of Rule 702.[21] However, the history she relied on was placed in evidence by five other witnesses, namely Claire, Ann, Crawford, Jacobsen, and Banano, and her testimony regarding her physical examination of Claire aided Chaupette's defense, as the examination revealed no physical injury. We find that any error in the admission of Dupont's "diagnosis" was clearly harmless and did not result in prejudice to Chaupette.

B.     Deslie Banano

¶11. Troy also faults the trial court for allowing Banano to testify about her therapy sessions with Claire. Banano testified that, during individual interviews, Ann and Claire both told her that Claire had been sexually abused by Troy.[22] As a result, Banano developed a treatment plan "to work on issues related to the sexual abuse and have [Claire] alleviate some of the trauma related, help her describe and reframe sexual abuse, alleviate guilt associated with it." Banano noted that Claire appeared fearful and embarrassed when discussing the abuse and that she eventually became avoidant of the topic. On cross-examination, it was revealed that Claire had disclosed more details about the abuse as her therapy progressed but, on redirect, Banano explained that, in her experience, children generally tell more information over time. After twelve individual therapy sessions, Banano concluded that

---

[21]Miss. R. Evid. 702.

[22]Banano was adamant that Ann and Ellen did not participate in Claire's therapy sessions and that Claire was not present when Banano updated them on her progress.

Claire had improved, because "the effects of the sexual abuse had abated and she seemed to be progressing normally. And it was not an issue that she was dealing with in daily life." Banano referred her to a girls' group for further counseling.

¶12. The vast majority of Banano's testimony pertained to the facts and circumstances surrounding her treatment of Claire and, as such, was appropriate lay testimony from a physician. Notably, she never testified that Claire's behavior was consistent with that of a sexually abused child or that she believed Claire had been sexually abused by Troy. But Banano did enter the realm of expert testimony when she relied on her experience to opine that children generally provide more information over time. However, we cannot say that Troy was prejudiced by the admission of this one improper comment, and certainly there was not "substantial prejudice."[23] We will not reverse a conviction based on a harmless error.

**II. Credibility Testimony**

¶13. Chaupette's attorney questioned the source of Claire's abuse allegations with the following questions during his cross-examination of Banano:

> Q.    You would agree with me, wouldn't you, that [Claire] has been reminded of this over and over and over, over all these years by [Ann] and her grandmother?
> A.    I could only assume that.
> . . .
> Q.    And you would agree with me that a child that's four years of age or five years of age, once something is repeatedly drummed into their little mind, they can succumb to suggestions, can't they?
> A.    Yes. They are susceptible to suggestion.

---

[23] *See* **Griffin v. McKenney**, 877 So. 2d 425, 441 (Miss. Ct. App. 2003) (holding admission of expert testimony from a lay witness did not warrant reversal when error did not substantially prejudice the opposing party).

> Q. Sure, sure. And sometimes they can actually believe things that are not true?
>
> A. They can.

As a result, Banano was allowed, over Troy's objection, to provide the following testimony on redirect:

> Q. Deslie, you were asked a lot of questions on Cross-Examination about the susceptibility of a four year old to people talking to them?
>
> A. Yes.
>
> Q. Do you feel like that was the case in this situation?
>
> A. No. I do not.

On appeal, Troy alleges this testimony was an inappropriate "truthfulness" opinion. We disagree.

¶14. Testimony regarding a child sex-abuse victim's credibility is not highly regarded, being considered "of dubious competency."[24] However, such testimony is permissible so long as it does not comment on the truthfulness of the victim's accusations and is especially warranted when a victim's credibility previously has been attacked.[25]

¶15. Testimony similar to that at issue here was challenged in **Hosford v. State**.[26] In **Hosford**, the defendant suggested that the child sex-abuse victim had confused him with

---

[24] **Hobgood v. State**, 926 So. 2d 847, 853 (Miss. 2006).

[25] **Id.** at 854; *see also* **Hosford v. State**, 560 So. 2d 163, 166-67 (Miss. 1990) (holding it was appropriate to allow a child's therapist to testify about the quality of the child's sexual-abuse allegations in order to "negat[e] the defense position that the victim had confused [the defendant] with other abusers"); **Elkins v. State**, 918 So. 2d 828, 831-32 (Miss. Ct. App. 2005) (holding it was appropriate to allow a social worker to testify that the victim's "behavior and demeanor were consistent with those of children who have been sexually abused" and that the victim kept her story straight, unlike most children who have been coached to lie about abuse).

[26] **Hosford**, 560 So. 2d at 166-67.

10

other abusers.[27]  In response, the child's therapist was allowed to provide the following testimony:

> Q. In what Billy had done to her as opposed to what other individuals had done to her, has she been consistent in that regard?
>
> A. Correct.
>
> Q. Based upon your educational background and your counseling sessions with [the child], do you have an opinion as to the possibility that [the child] has confused Billy Hosford with other individuals who have victimized her?
>
> . . .
>
> A. I don't think that she has confused what has happened, primarily because of what I have already said. The emotional response that she has toward each perpetrator is very specific; very, very specific. And that toward him is specific also.[28]

The Court did not find this line of questioning to be reversible error, stating:

> Viewed out of context, the above-quoted testimony treads close to the brink of reversible error as a comment upon the truthfulness of the child's accusations.  Had such statements been made wholly without reference to the impeachment of the victim on cross-examination, reversible error may well have occurred.  In *Williams v. State*, 539 So. 2d 1049, 1051 (Miss. 1989), the Court held such testimony "of dubious competency."  We do not retreat from these cases but hold, under the particular circumstances of this case, that [the therapist]'s brief testimony, negating the defense position that the victim had confused appellant with other abusers, did not rise to the level of bolstering and is not reversible error.[29]

¶16.    As in *Hosford*, the trial court here had to determine to what extent the State could respond to Troy's attack on Claire's credibility.  Banano was allowed to say only that she did

---

[27] *Id.*

[28] *Id.* at 166.

[29] *Id.* at 166-67.

11

not believe Claire had been brainwashed by her mother and grandmother. She did not say Claire was telling the truth or even that she found Claire to be credible. Banano's testimony was shorter and less revealing than that permitted in *Hosford*. As such, the trial court did not abuse its discretion by allowing her comment. This issue is without merit.

### III. Hearsay Testimony

¶17. Troy argues that admitting hearsay testimony from five witnesses under the tender-years exception was cumulative and unfairly prejudicial. A trial court's admission or exclusion of testimony is reviewed for an abuse of discretion.[30]

> The Mississippi Rules of Evidence provide a tender years exception to the rules prohibiting hearsay: A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.[31]

¶18. Testimony admissible under the tender-years exception still may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice."[32]

¶19. "Prejudicial overuse of the tender years exception" was addressed by the Court of Appeals in *Carter v. State*.[33] In *Carter*, the defendant argued that he had suffered a manifest

---

[30] *Foster v. Noel*, 715 So. 2d 174, 181 (Miss. 1998); *see also Carter v. State*, 996 So. 2d 112, 116 (Miss. Ct. App. 2008).

[31] *Carter v. State*, 996 So. 2d 112, 124-25 (Miss. Ct. App. 2008) (quoting Miss. R. Evid. 803(25)).

[32] Miss. R. Evid. 403.

[33] *Carter v. State,* 996 So. 2d 112, 116 (Miss. Ct. App. 2008).

12

injustice when the State was allowed to use the tender-years exception to elicit hearsay testimony regarding the victim's outcry statement from eight witnesses.[34] In rejecting the defendant's argument, the Court of Appeals found it significant that most of the witnesses discussed the victim's outcry statement "only as it related to the true purpose of their testimony"; for example, a police officer discussed the statement in relation to his investigation, and a doctor discussed the statement in relation to his examination.[35] The Court of Appeals also noted that "it is not unusual for multiple witnesses to testify regarding a child's outcry statement in [child sexual-abuse] cases."[36]

¶20.    As in *Carter*, each of the witnesses at issue here discussed Claire's abuse allegations only as they related to their involvement in the case, and multiple convictions based on such testimony from five or more witnesses have been affirmed by this Court.[37] For these reasons, we find the testimony admitted under the tender-years exception was not unfairly prejudicial and that the trial court did not abuse its discretion in allowing it to be admitted.  This issue

---

[34]*Id.* at 125.

[35]*Id.*

[36]*Id.*

[37]*Hobgood*, 926 So. 2d at 851-52 (approving the admission of testimony from six witnesses regarding the victim's allegations); *Smith v. State*, 925 So. 2d 825, 830-32 (Miss. 2006) (approving the admission of testimony from six witnesses regarding the victim's allegations); *Withers v. State*, 907 So. 2d 342, 344, 348-49 (Miss. 2005) (approving the admission of testimony from seven witnesses regarding the victim's allegations).

is without merit.[38]  Finding no reversible error, we affirm the judgment of the Pearl River Circuit Court.

**¶21.   CONVICTION OF CHILD MOLESTATION AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE (5) YEARS TO BE SERVED AND THE REMAINING TEN (10) YEARS TO BE SERVED UNDER THE POST-RELEASE PROVISIONS WITH A FIVE (5) YEAR SUPERVISION PERIOD, AFFIRMED.  APPELLANT SHALL PAY A FINE OF $1,000, AN ASSESSMENT OF $2,000 AND ALL COURT COSTS.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, PIERCE AND COLEMAN, JJ., CONCUR.  CHANDLER, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**CHANDLER, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶22.   The majority holds that Claire's pediatrician, Dr. Dupont, could not testify to the diagnosis she had reached during her care and treatment of Claire because she had not been designated as an expert witness. Yet the majority recognizes that a treating physician can testify as a lay witness "regarding: 1) 'the facts and circumstances surrounding the care and treatment of the patient'; 2) 'what his records about the patient reveal'; and 3) 'what conditions the patient was suffering from if the opinion was acquired during the care and treatment of the patient.'" Maj. Op. at ¶8 (quoting ***Griffin v. McKenney***, 877 So. 2d 425, 439-40 (citing ***Scafidel v. Crawford***, 486 So. 2d 370, 372 (Miss. 1986)). Because Dr. Dupont's diagnosis of sexual abuse was made during her care and treatment of Claire, it was a fact to which Dr. Dupont could testify without having been designated as an expert witness.

_____

[38]Chaupette argues that tender-years testimony should be subjected to the three-pronged standard used to determine the evidentiary value of photographs in murder cases. We find this argument unpersuasive.  Oral testimony and photographs are perceived differently and child sexual-abuse cases present unique evidentiary challenges.

14

I would find no error in the admission of Dr. Dupont's testimony; therefore, I concur in part and in the result.

¶23. The distinction between lay and expert testimony is vital because expert testimony is subject to special discovery rules to allow the opposing party an opportunity to challenge the expert's qualifications. *Sample v. State*, 643 So. 2d 524, 530 (Miss.1994); *see* M.R.C.P. 26 (b)(4) (civil cases); URCCC 9.04 (A)(4) (criminal cases). It is well-established in this Court's jurisprudence that treating physicians may testify as lay witnesses regarding their care and treatment of patients, including a diagnosis reached in the course of treatment, but may not testify to standards of care or causation, or use their expertise to explain the significance of a diagnosis or answer hypothetical questions. In *Scafidel v. Crawford*, 486 So. 2d 370, 372 (Miss. 1986), Scafidel's treating physicians testified as lay witnesses that, in the course of treatment, she had been diagnosed with anemia. Neither physician was permitted to testify about the effects of anemia. *Id.* Because the physicians had acquired their opinions that Scafidel was anemic during her care and treatment and had not explained how her anemia was significant to the case, the Court held that their testimony had not crossed the "impermissible line between fact testimony and expert opinion." *Id.*

¶24. In *Foster v. Noel*, 715 So. 2d 174, 178 (Miss. 1998), the trial court allowed Noel's doctor to give lay testimony about Noel's care and treatment on the night of her false arrest. *Id.* Noel's doctor testified that Noel had a preexisting condition of depression which had been aggravated by the false arrest. *Id.* This Court held that the physician's "revelation that Noel had a pre-existing condition did not constitute impermissible expert opinion, as he did not testify about the significance of her depression and the effect the acute anxiety she

15

suffered as a result of being arrested would have on her condition in the future." *Id.* However, the treating physician had rendered improper expert testimony by stating that Noel's depression had been aggravated by the false arrest. *Id.* That testimony constituted inadmissible expert testimony because it explained how Noel's depression was significant to the case. *Id.*

¶25. The Court of Appeals relied on *Scafidel* and *Foster* in *Griffin v. McKenney*, 877 So. 2d 425 (Miss. 2003). Griffin sued his treating physician, Dr. McKenney, for medical malpractice. *Id.* at 429. Although Dr. McKenney had not been designated as an expert witness, he gave detailed medical testimony explaining his treatment of Griffin. *Id.* at 439. The Court of Appeals held that Dr. McKenney did not have to have been designated as an expert to render this testimony because it "was solely explanatory of Dr. McKenney's treatment of [Griffin] and of his records and nursing records about [Griffin]'s care." *Id.* at 440. However, the Court of Appeals held that Dr. McKenney "stray[ed] into the realm of expert testimony" by rendering medical opinions in response to hypothetical questions. *Id.* at 440-41. In other words, Dr. McKenney was permitted as a lay witness to testify to the historical facts of the medical impressions and opinions he had formed in the course of his treatment of Griffin, but could not elaborate beyond his perceptions formed at that time.

¶26. The Court of Appeals applied the same reasoning in the personal-injury case of *APAC Mississippi, Inc. v. Johnson*, 15 So. 3d 465 (Miss. Ct. App. 2009). To establish her injuries, Johnson called a nurse practitioner and a physician who had treated her after the accident. Neither had been designated as an expert witness. *Id.* at 469-70. The nurse practitioner testified from Johnson's medical records that Johnson had a hairline fracture of her cervical

16

vertebrae, and the physician reviewed photographs of Johnson's injuries and explained her diagnosis of Johnson. *Id.* at 472. The Court of Appeals found that the witnesses' testimony had been confined to the facts and circumstances surrounding Johnson's care and treatment, what the medical records revealed, and diagnostic opinions acquired during Johnson's care and treatment. *Id.* The Court of Appeals held that neither witness had rendered impermissible expert testimony. *Id.*

¶27. These decisions provide insight into the dividing line between lay and expert testimony by a treating physician. "Typically, an expert witness is an 'outsider' to the case who evaluates the evidence in an attempt to explain it to the jury." *Crist v. Loyacano*, 65 So. 3d 837, 844 (Miss. 2011). "Before experts may deliver opinions to the jury, experts must be vetted by the court and must satisfy certain criteria." *Id.* "By contrast, a fact witness may be virtually any competent person whose testimony is based on personal knowledge." *Id.* (citing M.R.E. 601); *see* M.R.E. 602 (a person must have personal knowledge of a matter to testify).

¶28. Unlike a typical expert witness, a treating physician is not an outsider to the case. When a treating physician testifies about a patient's care and treatment, the medical records documenting that care and treatment, and diagnoses formed in the course of the patient's care and treatment, the treating physician is testifying based on personal knowledge and is properly deemed a fact witness. *Scafidel*, 486 So. 2d at 372. In contrast, a medical expert is called not to testify about historical facts personally observed, but to offer opinions or other testimony about the case from the perspective of an uninvolved third party possessing specialized knowledge helpful to the jury's determination of the issues. M.R.E. 702. A treating physician must be designated as an expert if the treating physician goes beyond

17

historical facts personally observed and "evaluates the evidence in an attempt to explain it to the jury." *Crist*, 65 So. 3d at 844. Therefore, our precedent forbids treating physicians not designated as experts from testifying to standards of care, causation, or using their expertise to explain the significance of a diagnosis or answer hypothetical questions.[39] *Foster*, 715 So. 2d at 178; *Scafidel*, 486 So. 2d at 372; *APAC Mississippi*, 15 So. 3d at 472; *Griffin*, 877 So. 2d at 440-41.

¶29.    Dr. Dupont testified that she was Claire's pediatrician and that she had examined Claire shortly after the allegations of abuse arose. Dr. Dupont testified that she performed an external superficial exam on Claire and that she had no apparent genital injury or abnormality. Based on the physical exam and patient history, Dr. Dupont testified that her diagnosis was sexual abuse. As a treating physician testifying as a lay witness, Dr. Dupont was permitted to testify to "what conditions the patient was suffering from if the opinion was acquired during the care and treatment of the patient." *Griffin*, 877 So. 2d at 439-40. Plainly, Dr. Dupont's diagnosis was made in the course of her care and treatment of Claire. Therefore, the trial court properly allowed her to render this testimony as a lay witness. *See id.* While the majority finds that the trial court's ruling was error, I would find no error in the admission of Dr. Dupont's testimony. Therefore, I concur in part and in the result.

---

[39] This Court also has applied this general analysis in cases involving fact witnesses possessing expertise of the nonmedical variety. *See Quitman County v. State*, 910 So. 2d 1032,1045 (Miss. 2005) (circuit judges were permitted as lay witnesses to give their personal observations on how the county's public defender system worked); *Langston v. Kidder*, 670 So. 2d 1, 4 (Miss. 1995) (a fact witness's opinion on industry standards was derived from specialized knowledge; therefore, it was subject to expert disclosure rules); *see also Mitchell v. Barnes*, 96 So. 3d 771, 779 (Miss. Ct. App. 2012) (a police officer who had not personally observed the subject accident could not give opinions on speed or driver negligence without having been designated as an expert).

**KING, J., JOINS THIS OPINION.**