# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-KA-01298-SCT

*JOHNNY LEE SADDLER a/k/a JOHNNY*
*SADDLER*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 09/05/2018 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| TRIAL COURT ATTORNEYS: | JASE DALRYMPLE |
| | STEVE WALLACE |
| | SCOTT COLOM |
| | SCOTT ROGILLIO |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: JUSTIN T. COOK |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALICIA AINSWORTH |
| DISTRICT ATTORNEY: | SCOTT COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/30/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Johnny Lee Saddler argues on appeal that his constitutional and procedural rights were

violated during trial court proceedings.  Saddler argues that because he invoked his right to

counsel and his right to silence, the trial court erred by denying the motion to suppress his

confession.  Saddler further argues that his trial counsel was constitutionally inadequate.

Finally, Saddler argues that the trial court erred by allowing the State to present improper lay opinion evidence.

## FACTS AND PROCEDURAL HISTORY

¶2.     Thirteen-year-old Amy[1] is Jessica Orr's aunt's daughter, but Amy has lived with Orr since her birth due to her mother's death. Amy is a special needs child and has ADHD. On September 2, 2016, Jessica Orr walked down the street to pick up her children, who had been playing in the neighbor's pool. As Orr approached the house, she claims that she saw Amy with Johnny Saddler. Orr stated, "Her pants were down. His pants were down. Her shirt was up. He was not patting, he was fondling her breast, and his other hands was inside her pants." The neighbor Tommy Shelton was present at the pool, but he did not witness the alleged incident. Orr brought her children back home and called the police.

¶3.     The responding officer was told by Saddler's probation officer to arrest Saddler. After a few days, Saddler was interviewed by Investigator Mary Hudgins and Lieutenant Tony Cooper. Hudgins advised Saddler of his *Miranda* rights, and Saddler indicated that he understood them. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Hudgins then read the waiver-of-rights form to Saddler and asked if he was willing to talk to her. Saddler signed the waiver-of-rights form and agreed to speak with the investigators.

¶4.     During the interview, Saddler first claimed that he never touched any of the children. Saddler claimed that Orr was yelling as she approached and that she called him a sex offender. However, Saddler eventually changed his story after further questioning. Saddler

---

[1] Fictitious names are used for the minor children.

stated, "I'm gonna leave it right there and let the courts decide. I didn't but I did it. I gotta leave it, I gotta leave it at that." Saddler claims that his statement was an attempt to invoke his right to remain silent and his right to counsel. However, Saddler continued answering questions. When asked about his previous conviction for fondling, Saddler claimed that he had touched the victim in the previous case because "she was maturing and she was already, ah, she was flirty." When asked about the incident with Amy, Saddler admitted that after Amy rubbed his head, "I touched her. I pushed her away. I did touch her. And I touched her up here." Saddler continued, "Sure, I wanted to touch it . . . You know? I wanted to touch her, so I pushed her away by touching her tits." Cooper asked, "Your intent was to feel her but make it look like you were pushing her," and Saddler answered, "yeah." Saddler later explained, "young girls are just, they amaze me . . . when they begin to mature . . . I have that desire to want to touch them, but not interact in any other kind of way. I don't want to have sex with them or nothing like that."

¶5.    The only other adult present, Tommy Shelton, did not have a clear view of the alleged incident. Shelton testified that he did not believe the incident occurred. Shelton further testified that he was unaware that Saddler had confessed.

## STANDARD OF REVIEW

¶6.    The standard of review for the admission of a confession is as follows: "[d]etermining whether a confession is admissible is a finding of fact which is not disturbed unless the trial judge applied an incorrect legal standard, committed manifest error, or the decision was contrary to the overwhelming weight of the evidence." *Hunt v. State*, 687 So. 2d 1154, 1159

3

(Miss. 1996) (internal quotation marks omitted) (quoting *Lee v. State*, 631 So. 2d 824, 826 (Miss. 1994)). "This Court will reverse a trial court's denial of a motion to suppress only if the ruling is manifest error or contrary to the overwhelming weight of the evidence." *Barnes v. State*, 30 So. 3d 313, 316 (¶ 8) (Miss. 2010) (citing *Ruffin v. State*, 992 So. 2d 1165, 1169 (¶ 8) (Miss. 2008)). "Once a trial judge determines admissibility, the defendant/appellant faces a heavy burden in trying to reverse on appeal." *Ruffin v. State*, 992 So. 2d 1165, 1169 (¶ 8) (Miss. 2008) (citing *Greenlee v. State*, 725 So. 2d 816, 826 (¶ 26) (Miss. 1998)).

## DISCUSSION

**I.** **The trial court did not err by denying Saddler's motion to suppress his confession based on an alleged violation of his *Miranda* rights.**

¶7. Saddler argues that the trial court erred by denying his motion to suppress his statements based on the fact that he invoked his right to remain silent and his right to an attorney. Investigator Hudgins advised Saddler of his ***Miranda*** rights, and Saddler indicated that he understood them. During the interview, Saddler stated, "I'm gonna leave it right there and let the courts decide. I didn't but I did it. I gotta leave it, I gotta leave it." Saddler argues that the statement was a clear and unequivocal invocation of his right to remain silent and his right to counsel.

### 1. Saddler is procedurally barred from arguing that his right to counsel has been violated.

¶8. At trial, Saddler's motion to suppress was based on his right to remain silent, and the motion to suppress mentioned nothing of his right to counsel. "[A]sserting grounds for an objection on appeal that differ[ ] from the ground given for the objection at the trial level

does not properly preserve the objection for appellate review." ***Roberts v. State***, 234 So. 3d 1251, 1262 (¶ 29) (Miss. 2017) (second alteration in original) (internal quotation marks omitted) (quoting ***Woodham v. State***, 779 So. 2d 158, 161 (¶ 12) (Miss. 2001)). Saddler failed to argue at trial that his right to counsel had been violated, thus he is procedurally barred from raising the issue on appeal.

**2.    Saddler's *Miranda* right to remain silent was not violated.**

¶9.    Saddler further argues that his right to remain silent has been violated. Saddler claimed in his motion to suppress and here that his statement, "I'm gonna leave it right there and let the courts decide. I didn't but I did it. I gotta leave it, I gotta leave it," was an invocation of his right to remain silent. The statement, while possibly an ambiguous attempt to invoke his right to remain silent, was not an unequivocal and unambiguous assertion of his rights.

¶10.    Saddler cites ***Berghuis v. Thompkins*** in his motion to suppress, which extends the ***Davis v. United States*** ambiguity analysis to the right to remain silent. *See **Berghuis v. Thompkins***, 560 U.S. 370, 381 (2010); ***Davis v. United States***, 512 U.S. 452 (1994). The United States Supreme Court in ***Davis*** held that invocation of the right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." ***Davis***, 512 U.S. at 459 (internal quotation marks omitted) (quoting ***McNeil v. Wisconsin***, 501 U.S. 171, 178 (1991)). The United States Supreme Court in ***Berghuis*** held, "there is no principled reason to adopt different standards for determining when an accused has invoked the ***Miranda*** right to remain silent and the

*Miranda* right to counsel at issue in *Davis*." *Berghuis*, 560 U.S. at 381. However, the Court continued,

> There is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously. A requirement of an unambiguous invocation of Miranda rights results in an objective inquiry that "avoid[s] difficulties of proof and . . . provide[s] guidance to officers" on how to proceed in the face of ambiguity.

*Id.* at 381 (alterations in original) (quoting *Davis v. United States*, 512 U.S. 452, 458-59 (1994)).

¶11. Saddler argues that *Holland v. State*, 587 So. 2d 848 (Miss. 1991) should apply, arguing that it should apply to ambiguous references to the right to remain silent. "If a defendant makes equivocal or ambiguous utterances which could be interpreted as an invocation, then the trend is to require cessation of interrogation except for strictly-limited inquiry for clarification purposes." *Holland*, 587 So. 2d at 856 (emphasis omitted) (citing *United States v. Gotay*, 844 F.2d 971, 975 (2d Cir. 1988), *abrogation recognized in Diaz v. Senkowski*, 76 F.3d 61, 63 (2d Cir. 1996)). However, the statement was clarified in *Chamberlin*, when the Mississippi Supreme Court held,

> This Court previously has held that if an officer understands only that the suspect *might* be invoking the right to counsel, an officer must cease interrogation, except for inquiries made to clarify the defendant's request. *Holland*, 587 So. 2d at 856 (emphasis added). The United States Supreme Court declined to require such a procedure but noted in *Davis* that where the officers followed the same procedure as adopted by this Court, such a procedure is "good police practice for the interviewing officers." *Davis*, 512 U.S. at 461.

*Chamberlin v. State*, 989 So. 2d 320, 333 (¶ 38) (Miss. 2008).

6

¶12.    In *Moore v. State*, the Court held, "Mississippi law is well-established, in cases involving the invocation of the right to counsel, that an interviewing officer may clarify an ambiguous invocation.   Today, we extend this same analysis to cases involving the invocation of the right to remain silent." *Moore v. State*, 287 So. 3d 905, 914 (¶ 33) (Miss. 2019) (citation omitted).

¶13.    *Holland* does not apply in the case *sub judice*.   The Court has since adopted the position taken in *Davis* that clarifying questions are not required when a suspect ambiguously asserts their rights.   *Barnes v. State*, 30 So. 3d 313, 318 (¶ 15) (Miss. 2010).   "Pursuant to *Davis*, Barnes failed to make and unambiguous, unequivocal request for an attorney, and [the officer] had no obligation to stop questioning her."   *Id.* (citing *Davis v. United States*, 512 U.S. 452, 461-62 (1994)).   Additionally, the Court in *Franklin v. State* stated, "[n]ever has this Court held that the Mississippi Constitution provides greater protection than the U.S. Constitution to criminal suspects who invoke the right of counsel during custodial interrogations."   *Franklin v. State*, 170 So. 3d 481, 491 (¶ 37) (Miss. 2015). The Court in *Franklin* held that Mississippi does not require the officer to ask clarifying questions after ambiguous utterances.   *Id.*   While cases such as a *Holland* and *Moore* have stated that it is good police practice for officers to ask clarifying questions, *Franklin* and *Barnes* held that such clarifying questions are not required.

¶14.    Saddler's statement was not an explicit invocation of his right to remain silent. Further, even if the statement was an ambiguous assertion of his right to remain silent, the officer was not required to ask clarifying questions.  Based on the highly deferential standard

of review, the trial judge did not commit manifest error when he denied Saddler's motion to suppress.

### 3. Saddler effectively waived his rights.

¶15.    In the alternative, Saddler argues that his waiver of rights was ineffective.  Saddler is procedurally barred from making the argument because he raised the issue for the first time on appeal.  *Roberts v. State*, 234 So. 3d 1251, 1262 (¶ 29) (Miss. 2017) (quoting *Woodham v. State*, 779 So. 2d 158, 161 (¶ 12) (Miss. 2001)).

## II.    Saddler's counsel was not ineffective.

¶16.    "Whether a defendant has received ineffective assistance of counsel is a question of law reviewed *de novo*[.]" *Taylor v. State*, 167 So. 3d 1143, 1146 (¶ 5) (Miss. 2015).  "'[T]he defendant must show that counsel's performance was deficient'"  and "'that the deficient performance prejudiced the defense.'" *Id.*  (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Additionally, ineffective assistance of counsel is usually not considered on direct appeal:

> It is unusual for this [c]ourt to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal . . . . [t]his court will rule on the merits on the rare occasions where "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge."

*Wilcher v. State*, 863 So. 2d 776, 825 (¶ 171) (Miss. 2003) (citations omitted) (quoting *Aguilar v. State*, 847 So. 2d 871, 878 (¶ 17) (Miss. Ct. App. 2002)).

¶17. However, ineffective assistance of counsel claims may be raised on direct appeal if "the presented issues are based on facts fully apparent from the record." *Parker v. State*, 30 So. 3d 1222, 1232 (¶ 36) (Miss. 2010) (citing *Archer v. State*, 986 So. 2d 951, 955 (¶ 16) (Miss. 2008); Miss. R. App. P. 22(b)). In the case *sub judice*, the issues presented by Saddler are based on facts fully apparent from the record, thus the claim is proper on direct appeal.

¶18. Saddler's counsel was not ineffective. Saddler argues that his counsel's failure to object to the use of the interrogation video, prior criminal history, and fearmongering in closing argument was ineffective assistance of counsel because it prejudiced his defense. However, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy[.]" *Bell v. State*, 879 So. 2d 423, 438 (¶ 49) (Miss. 2004) (internal quotation marks omitted) (quoting *Jackson v. State*, 815 So. 2d 1196, 1200 (¶ 8) (Miss. 2002)). Saddler argues that the trial court erred by allowing the State to use his interrogation video as evidence because the video contained hearsay statements. The alleged hearsay in the interrogation was only arguably hearsay. "Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Wright v. State*, 958 So. 2d 158, 167 (¶ 25) (Miss. 2007) (citing Miss. R. Evid. 801(c)). The statements of third parties in the interrogation video were arguably not used to prove the truth of the matter asserted, thus Saddler's counsel's failure to object was within the ambit of trial strategy.

¶19. Evidence of Saddler's prior acts was admissible. "[W]hen the sexual acts bear 'overwhelming similarities' to the conduct at issue, they are 'undeniably' admissible under Rule 404(b) as both motive and as evidence of a 'common plan, scheme, or system.'" *McGrath v. State*, 271 So. 3d 437, 441 (¶ 16) (Miss. 2019) (quoting *Green v. State*, 89 So. 3d 543, 550, n.19 (¶ 17) (Miss. 2012)). The evidence of Saddler's prior acts was admissible, thus his counsel was not ineffective for failing to object to the use of the prior acts.

¶20. Finally, Saddler's counsel's failure to object to comments made during closing arguments was not ineffective assistance of counsel. "Attorneys on both sides are generally afforded broad latitude during closing arguments." *Moffett v. State*, 156 So. 3d 835, 857 (¶ 61) (Miss. 2014) (citing *Wright v. State*, 958 So. 2d 158, 161 (¶ 7) (Miss. 2007)). Because of the broad latitude afforded to counsel during closing arguments, Saddler's counsel's failure to object was in the ambit of trial strategy and does not give rise to a claim of ineffective assistance of counsel.

### III. Cooper's testimony was not improper lay opinion testimony.

¶21. "The standard of review regarding the admission or exclusion of evidence is abuse of discretion." *Palmer v. State*, 939 So. 2d 792, 794 (¶ 7) (Miss. 2006) (citing *Jones v. State*, 904 So. 2d 149, 152 (¶ 11) (Miss. 2005)). "The admissibility of evidence rests within the discretion of the trial court, and reversal will be appropriate only when an abuse of discretion resulting in prejudice occurs." *Id.* at 794-95 (citing *Clemons v. State*, 732 So. 2d 883, 887 (¶ 18) (Miss. 1999)).

10

¶22.   Saddler argues that Cooper gave impermissible opinion testimony when the State asked, "Based on your experience, is it common for a person to deny a crime before they admit it when they're being questioned[?]" Cooper answered, "[y]es, sir, majority of them do." Saddler objected to the testimony as improper lay opinion testimony. The State argues that the statement is admissible under Mississippi Rule of Evidence 701, because it was based on the witness's perception, helpful for understanding a fact in issue, and not based on specialized knowledge. Saddler argues that Cooper's opinion is based on his experience as a police officer, thus the opinion would be improper as lay testimony. However, the testimony offered by Cooper was neither expert opinion testimony nor lay opinion testimony. Instead, Cooper offered fact testimony based on his perceptions as a police officer. There is a fine line between fact testimony and opinion testimony:

> The question is whether these two fact witnesses crossed an impermissible line between fact testimony and expert opinion when they stated Mrs. Scafidel was anemic. We conclude they did not . . . . Just as they testified as fact witnesses that she had fever, chills, and diarrhea, so could they state, in our opinion, that she was anemic without becoming expert witnesses.

*Scafidel v. Crawford*, 486 So. 2d 370, 372 (Miss. 1986).

¶23.   Cooper was asked whether the majority of suspects deny a crime before they admit to it. His answer in the affirmative was not an opinion that he formed based on his training as an investigator but instead was a fact that he observed during the course of his work. "We note that these witnesses were not retained or tendered as experts, but were full time hospital employees during the time in question and offered only fact testimony regarding hospital practice and procedures[.]" *Kern v. Gulf Coast Nursing Home of Moss Point, Inc.*, 502 So.

11

2d 1198, 1200 (Miss. 1987). Cooper was simply offering fact testimony about investigation practice and procedures. "This Court has held that a full-time employee in a case such as this testifying on his personal knowledge rather than any expertise he possessed would not be considered an expert witness." *Id.* Cooper was simply offering fact testimony that illustrated the procedures used during an investigation.

¶24. The separate opinion's citation of *Chaupette v. State*, 136 So. 3d 1041 (Miss. 2014), does not persuade us otherwise. The *Chaupette* Court did not quote or give much context to the testimony there at issue. *Chaupette*, 136 So. 3d at 1047 (¶ 12). However, it appears that Banano, the witness in that case, testified that children whom she did not interview, *i.e*, from outside her personal knowledge, provided more information over time. *Id.* As seen from Cooper's testimony, quoted above, he testified only about his personal experience in interviewing witnesses. The separate opinion attempts misdirection when pointing out that Banano's statement regarding the expected behavior of children is based on nothing more than her personal knowledge. The basis of Banano's opinion is not the issue. The issue is that her statement was an opinion rather than factual testimony about her own experience because she sought to extrapolate from her experience to testify about what children do in similar cases about which she had no personal knowledge. *Id.* Again, Cooper testified only about his own experience and, therefore, about a fact within his personal knowledge.

¶25. "Abuse of discretion is found when the reviewing court has a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.'" *Quitman Cty. v. State*, 910 So. 2d 1032, 1042

(¶ 29) (Miss. 2005) (quoting ***Caracci v. Int'l Paper Co.***, 699 So. 2d 546, 556 (¶ 16) (Miss. 1997)). The reviewing court "must let stand a trial judge's findings of evidentiary or ultimate fact when substantial evidence in the record supports those findings, or when the findings are not 'clearly erroneous.'" ***Id.*** (internal quotation marks omitted) (quoting ***Crowe v. Smith***, 603 So. 2d 301, 305 (Miss. 1992)). Based on the highly deferential standard of review, the trial judge did not abuse his discretion when he allowed the officer to testify about his experience with criminal investigations.

¶26. Additionally, Saddler was not prejudiced by the admission of the testimony. "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." ***Fahy v. Connecticut***, 375 U.S. 85, 86–87 (1963). Saddler's confession was properly admitted evidence sufficient to support a jury verdict. Cooper's statement did not contribute to the conviction or prejudice Saddler's defense.

### CONCLUSION

¶27. Saddler waived his rights, and his confession was properly admitted. Saddler's counsel at trial was not ineffective. Finally, the statement made by Cooper was fact testimony, and its admission is not reversible error because it did not prejudice Saddler's defense. The judgment of the trial court is affirmed.

¶28. **AFFIRMED.**

**RANDOLPH, C.J., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KITCHENS, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J.**

13

**KITCHENS, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶29.    Respectfully, I concur in part and in result. I would hold that the trial court erred by allowing Officer Tony Cooper, a fact witness, to give expert testimony. Because the error was harmless, I agree with the majority's decision to affirm Johnny Lee Saddler's conviction of fondling, albeit for different reasons than those cited by the majority in its discussion of Officer Cooper's testimony.

¶30.    Officer Cooper was one of the police officers who interviewed Saddler and obtained his confession. During direct examination, the prosecutor asked Officer Cooper about his experience interviewing suspects. Officer Cooper testified that he had interviewed thousands of suspects during his sixteen-year career in criminal investigation. He testified about various aspects of his training in suspect interviewing, such as in the detection of subtle signs that a suspect is trying to deceive the interviewer. During this colloquy, the prosecutor asked Officer Cooper, "Now, during your experience is it common for criminal suspects to deny crimes for a significant period of time?" Saddler objected to this question because Officer Cooper had not been qualified as an expert witness. After the trial court overruled the objection, the prosecutor asked, "Based on your experience, is it common for a person to deny a crime before they admit it when they're being questioned?" Officer Cooper responded, "Yes, sir, [the] majority of them do." He testified that, when a suspect denies guilt, the officer should rely on the case file to determine how to proceed.

¶31.    Saddler argues that Officer Cooper's testimony that, based on his experience, guilty suspects commonly deny crimes while being interviewed was expert testimony and was

14

impermissible because Officer Cooper had not been qualified as an expert. Mississippi Rule of Evidence 702 provides,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

M.R.E. 702. In contrast, Mississippi Rule of Evidence 701 provides that

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> **(a)** rationally based on the witness's perception;
>
> **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

M.R.E. 701.

¶32.    The majority finds that Officer Cooper did not render an expert opinion but rather recited a fact that he had learned in his experience as a police officer: that the majority of suspects interviewed commonly deny having committed a crime before they admit it. "[W]here, in order to express the opinion, the witness must possess some experience or expertise beyond that of the average, randomly selected adult, it is a M.R.E. 702 opinion and

15

not a Rule 701 opinion." ***Cotton v. State***, 675 So. 2d 308, 311 (Miss. 1996) (internal quotation marks omitted) (quoting ***Sample v. State***, 643 So. 2d 524, 530 (Miss. 1994)). Officer Cooper's testimony that suspects commonly deny committing a crime before admitting it was an opinion about the behavior of suspects based on his experience as a police officer, experience that is "beyond that of the average, randomly selected adult." Therefore, it was expert testimony. Because Officer Cooper had not been qualified as an expert, the trial court abused its discretion by allowing that testimony. ***Cotton***, 675 So. 2d at 312.

¶33. This case is almost exactly on point with ***Chaupette v. State***, 136 So. 3d 1041, 1047 (Miss. 2014), another fondling case. In ***Chaupette***, Deslie Banano, a psychotherapist who was not qualified as an expert, testified as a fact witness about her therapeutic sessions with the child victim. ***Id.*** Banano testified that, as time went on, the child had revealed additional details about the abuse. ***Id.*** Banano then said that, "in her experience, children generally tell more information over time." ***Id.*** This Court held that "Banano did enter the realm of expert testimony when she relied on her experience to opine that children generally provide more information over time." ***Id.*** But because the admission of her testimony was harmless, the Court found no reversible error. ***Id.*** No difference exists between Officer Cooper's testimony about how suspects behave in interviews based on his experience and Banano's testimony about how children behave in interviews based on hers.[2] Similarly, in ***Croft v. State***, 283 So.

_____

[2] I find the majority's attempt to distinguish ***Chaupette*** unpersuasive. The majority says that Banano "testified that children whom she did not interview, *i.e*, from outside her personal knowledge, provided more information over time," but that here, Officer Cooper did not give expert testimony because he testified from his personal experience interviewing

16

3d 1, 10 (Miss. 2019), this Court found that a police officer's testimony had strayed into the realm of expert opinion testimony when he testified from his training, experience, and expertise about the behavior of gang members. Based on our clear precedent, Officer Cooper rendered inadmissible expert testimony.

¶34.    Although I find merit in Saddler's argument that the trial court abused its discretion by allowing Officer Cooper to give expert testimony, I would find that the error was harmless. "Harmless-error analysis prevents 'setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial.'" *Smith v. State*, 136 So. 3d 424, 435 (Miss. 2014) (quoting *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). Saddler initially had denied having fondled the victim. All Officer Cooper's testimony did was explain that it is common for a guilty suspect initially to deny wrongdoing in a police interview. Saddler ultimately confessed and copious other evidence, including eyewitness testimony, established his guilt. Because it had little chance of having changed the outcome of Saddler's trial, the error in admitting Officer

---

witnesses. Maj. Op. ¶ 24. First, nothing in *Chaupette* indicates that Banano's opinion was based on information outside her personal experience interviewing children. To the contrary, we said in *Chaupette* that "Banano did enter the realm of expert testimony *when she relied on her experience* to opine that children generally provide more information over time." *Chaupette*, 136 So. 3d at 1047 (emphasis added). Second, even when a witness such as Officer Cooper or Banano bases an opinion on personal experience, if that experience is outside the realm of the "experience or expertise . . . of the average, randomly selected adult," the opinion is expert testimony. *Cotton*, 675 So. 2d at 311 (quoting *Sample*, 643 So. 2d at 530). Just as Banano did in *Chaupette*, Officer Cooper rendered opinion testimony because he extrapolated from his experience to reach a conclusion about what the majority of suspects commonly do in interviews.

Cooper's testimony was harmless. I agree with the majority that Saddler's fondling conviction must be affirmed.

**KING, P.J., JOINS THIS OPINION.**